Dolores ARMIJO, Individually, as Personal Representative of the Estate of James Fray Saulsberry, and as next friend of Erin Armijo Saulsberry, Plaintiff,

v.

EX CAM, INC., and Armi Tanfoglio Giuseppe, Defendants.

Civ. No. 86–0737–JB.

United States District Court, D. New Mexico.

Feb. 6, 1987.

Ortega and Snead, P.A., Tanya L. Scott, Albuquerque, N.M., for plaintiff.

Miller, Stratvert, Torgerson & Schlenker, P.A., Judith Amer, Albuquerque, N.M., for defendants.

## MEMORANDUM OPINION AND ORDER

BURCIAGA, District Judge.

THIS MATTER comes on for consideration of Defendants' motion to dismiss. The Court, having reviewed the pleadings, the evidence of record and the relevant law, finds that Defendants' motion is well taken and will be granted.

This diversity action presents an issue of first impression before the courts of New Mexico. The issue, simply stated, is as follows: May the manufacturer of a gun which is used as an instrument for murder and assault be held liable in damages to a victim of such criminal activity? In this diversity action, this Court must follow New Mexico law. Federal courts, sitting in diversity, are required to apply the law of the forum state. *Pound v. Insurance Co. of North America*, 439 F.2d 1059 (10th Cir.1971); *Jaeco Pump Co. v. Inject-O-Meter Manufacturing Co.*, 467 F.2d 317 (10th Cir.1972). Where there is no state law on point, federal courts must construe the law of the state in the manner in which the state's highest court would so construe it if faced with similar facts and issues. *Holler v. United States*, 724 F.2d 104 (10th Cir. 1983); *Hartford v. Gibbons & Reed Co.*, 617 F.2d 567 (10th Cir.1980). This Court's opinion is that the New Mexico courts would not, under any existing theory of tort liability, recognize such a cause of action, and Plaintiff's case must therefore be dismissed.

The facts from which this claim arose are as follows. On or about April 3, 1983, Plaintiff Dolores Armijo's brother, Steven Armijo, shot and killed James Fray Saulsberry, Plaintiff's husband. Complaint, ¶ 5. Both Plaintiff and her young daughter witnessed the shooting, *id.*, ¶ 11, and were subjected to an assault by Steven Armijo, whereby he attempted to fire the gun at them, but it did not go off. Plaintiff's Response to Motion to Dismiss, p. 1.

Plaintiff alleges that the gun used by Steven Armijo to commit those criminal acts was of a type commonly known as a "Saturday Night Special." Complaint, ¶ 6. Defendant Ex Cam, Inc., is the importer and distributor of the gun which was used. Defendant Armi Tanfoglio Giuseppe ["Armi"] is the manufacturer and distributor. *Id.*, ¶ 5.

The Plaintiff presents four theories in support of her relatively novel claim: strict products liability, liability under an "ultra-hazardous activity" theory, negligence liability, and a narrow form of strict products liability for "Saturday Night Specials" articulated by the Supreme Court of Maryland in *Kelley v. R.G. Industries, Inc.,* 304 Md. 124, 497 A.2d 1143 (1985). The Court does not believe that the New Mexico courts would adopt any of these theories to recognize a cause of action in this case.

### Strict Products Liability

The New Mexico courts have adopted the law of strict products liability in tort, as set forth in the Restatement (Second) of Torts § 402A.[1] *Stang v. Hertz Corp.,* 83 N.M. 730, 497 P.2d 732 (1972). Under this doctrine, the Plaintiff has the burden of proving the following elements: (1) the product was defective; (2) the product was defective when it left the hands of the Defendant and was substantially unchanged when it reached the user or consumer; (3) that because of the defect the product was unreasonably dangerous to the user or consumer; (4) the consumer was injured or was damaged; (5) the defective condition of the product was the proximate cause of the injury or damage. *Tenney v. Seven-Up Co.,* 92 N.M. 158, 159, 584 P.2d 205 (1978).

■ Plaintiff's argument for strict liability fails on the first of these elements, that the product must be "defective." Plaintiff does not allege anywhere in her Complaint that the gun in question misfired or otherwise worked improperly. Plaintiff does not allege that the gun performed otherwise than exactly as intended. Rather, Plaintiff argues that the *risk* of intentional criminal misuse of such a firearm, such as happened in this case, is so great as to outweigh any potential societal benefit of the product, thus rendering it defective. No New Mexi-co case law supports this novel theory. Rather, the appropriate test for "defective condition" is found in comment g to § 402A: "g. **Defective Condition.** The rule stated in this section applies only where the product leaves the seller's hands, in a *condition not contemplated by the ultimate consumer,* which will be unreasonably dangerous to him." (Emphasis added.) Implicit in this analysis is the understanding that a product which has inherent and obvious dangers, which the average consumer would certainly recognize, is not "defective," merely because it was placed on the marketplace with such obviously dangerous propensities. It would be evident to any potential consumer that a gun could be used as a murder weapon. So could a knife, an axe, a bow and arrows, a length of chain. The mere fact that a product is capable of being misused to criminal ends does not render the product defective.

■ Although there is no New Mexico case law directly on this point, this Court believes that New Mexico courts would follow the overwhelming weight of authority which rejects strict products liability as a theory for holding handgun manufacturers liable for the criminal misuse of their products. *See Delahanty v. Hinckley,* Nos. 82–409 & 82–490, slip op. (D.C.D.C. Dec. 8, 1986); *Moore v. R.G. Industries, Inc.,* 789 F.2d 1326 (9th Cir.1986); *Martin v. Harrington & Richardson, Inc.,* 743 F.2d 1200 (7th Cir.1984); *Patterson v. Rohm Gesellschaft,* 608 F.Supp. 1206 (N.D.Tex.1985); *Mavilia v. Stoeger Industries,* 574 F.Supp. 107 (D.Mass.1983); *DeRosa v. Remington Arms Co.,* 509 F.Supp. 762 (E.D.N.Y.1981); *Rhodes v. R.G. Industries, Inc.,* 173 Ga. App. 51, 325 S.E.2d 465 (1985). There is no merit in Plaintiff's argument that these

---

1. **§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer** (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

rulings are not on point because the New Mexico courts do not embrace the "consumer expectation" theory of products liability law. Clearly, consumer expectation will always play some part in determining whether a product is "unreasonably dangerous." *See Skyhook Corp. v. Jasper*, 90 N.M. 143, 560 P.2d 934 (1977) ("there is no duty to warn of dangers actually known to the user of a product, regardless of whether the duty rests in negligence or in strict liability under § 402A," 90 N.M. at 148). Plaintiff has failed to state a claim for strict products liability under § 402A of the Restatement.

### "Ultrahazardous Activity"

■ Plaintiff argues, in her brief, that marketing of handguns should be classed as an "ultrahazardous activity" subject to strict liability.[2] Such a theory with respect to handgun manufacturers is not supported by New Mexico case law. In *Ruiz v. Southern Pacific Transportation Co.*, 97 N.M. 194, 638 P.2d 406 (Ct.App.1981), the court of appeals declined to impose strict "ultrahazardous activity" liability upon a railroad company, where plaintiff had been injured when a train began moving as he was attempting to climb between the cars. The court stated:

> We can thus dispense with the strict liability considerations raised in the "500" Series of the Restatement. New Mexico has not yet recognized the theory of a landowner's strict liability except in cases where his activity has involved the use of explosives.

97 N.M. at 200, 638 P.2d 406 (citation omitted).

The *Ruiz* decision indicates a willingness on the part of New Mexico courts to confine "ultrahazardous activity" liability to a specific setting: activities carried out on real property. However, a prior case had, without actually deciding the issue, indicated that the ultrahazardous activity doctrine might have some applicability in the products liability area. In *First National Bank v. Nor-Am Agricultural Products, Inc.*, 88 N.M. 74, 537 P.2d 682 (Ct.App. 1975), the court rejected the argument that treatment of seed grain with a poisonous chemical, known as Panogen grain treatment, was an "ultrahazardous activity." In so doing, the court applied the following test for ultrahazardous activity: (a) such activity is not a matter of common usage, and (b) the danger cannot be eliminated by the exercise of the utmost care. 88 N.M. at 79, 537 P.2d 682. The court held that "first, Panogen grain treatment had wide acceptance and use throughout the country.... Second, the arguments of all parties recognize that adequate warning would eliminate the danger." 88 N.M. at 79, 537 P.2d 682.

Whether or not the New Mexico courts intended, by this ruling, to imply that the "ultrahazardous activity" doctrine may be used to assert strict liability against the manufacturer of a product is unclear, especially in light of the more recent *Ruiz* opinion. However, even applying the *First National Bank* test to the case at bar would not result in liability for a manufacturer of guns, as guns are commonly distributed and the dangers, if misused, are so obvious as to not require any manufacturers' warnings. The *First National Bank* test would be more suited to impose liability on the *user* of a firearm than on the seller. Furthermore, a different conclusion would produce a result clearly contrary to existing New Mexico products liability law, which declines to make manufacturers into

---

**2.** Under § 519 of the Restatement (Second) of Torts: "One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." Section 520 of the Restatement sets forth the following factors to be considered in determining whether an activity is abnormally dangerous:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

insurers. *See Skyhook v. Jasper, supra.* To hold sellers liable under the "ultrahazardous activity" doctrine would, in the words of the Seventh Circuit, "require that manufacturers of guns, knives, drugs, alcohol, tobacco and other dangerous products act as insurers against all damages produced by their products." *Martin v. Harrington & Richardson, Inc.*, 743 F.2d 1200 (7th Cir.1984). Other jurisdictions which have considered the possible application of this doctrine to handgun manufacturers have similarly declined to impose liability. *See Perkins v. F.I.E. Corp.*, 762 F.2d 1250 (5th Cir.1985); *Riordan v. International Armament Corp*, 132 Ill.App.3d 642, 87 Ill. Dec. 765, 477 N.E.2d 1293 (1985). This Court does not believe New Mexico courts would recognize such an extension of this doctrine.

### Negligence

■ Plaintiff additionally seeks to impose liability on Defendants under a negligence standard. Plaintiff argues that Defendants breached a duty of reasonable care in marketing a product which carried some degree of risk that it might be used in a criminal enterprise. However, this Court is not persuaded that the New Mexico courts would be inclined to impose such a duty. Plaintiff points to cases such as *Lopez v. Maez*, 98 N.M. 625, 651 P.2d 1269 (1982), which imposed negligence liability upon the seller of alcohol to an intoxicated person, as evidence of the New Mexico courts' willingness to change the common law as times require. However, in *Lopez* the tavern-keeper's duty was found to arise from a statute making it unlawful to sell or serve liquor to an intoxicated person. In the area of firearm manufacture and sale, the New Mexico legislature, while imposing certain restrictions,[3] has not seen fit to make such distribution *per se* unlawful. In the absence of any legislative action, or specific guidance from the New Mexico courts, this Court will not impose a "duty" upon manufacturers of firearms not to sell their products, merely because such products have the potential to be misused for purposes of criminal activity.

### The Kelley Case

■ In *Kelley v. R.G. Industries, Inc.*, 304 Md. 124, 497 A.2d 1143 (1985), the Court of Appeals of Maryland created a novel cause of action: strict liability for the manufacturers of a certain type of cheap handgun, a "Saturday Night Special," to victims of criminal misuse of such a gun. The court's theory was that the "Saturday Night Special" is a cheap, easily-concealed gun which lends itself readily to criminal activity, while, to the court's mind, having little societal benefit.[4] Thus, the court allowed liability to be imposed upon the manufacturers of these specific types of guns.

This Court finds it unnecessary to engage in any lengthy discussion of the *Kelley* doctrine. To recognize such a cause of action in New Mexico would require an abrogation of the common law in a way bordering on judicial legislation. A federal court sitting in diversity is especially reluctant to take such action, in the absence of more specific guidance from the state courts. Furthermore, creation of such a doctrine is extremely problematic insofar as *which* manufacturers would be held liable. All firearms are capable of being used for criminal activity. Merely to impose liability upon the manufacturers of the cheapest types of handguns will not avoid that basic fact. Instead, claims against gun manufacturers will have the anomalous result that only persons shot with cheap guns will be able to recover, while those shot with expensive guns, admitted by the *Kelley* court to be more accurate and therefore deadlier, would take nothing. This Court does not believe the New Mexico courts would adopt such a doctrine.

Wherefore,

---

**3.** *See* §§ 30–7–1, 30–7–2, 30–7–3, 30–7–4, 30–7–9, 30–7–16, 4–41–10, 4–41–10.1, 17–2–12, 17–2–20.1, 17–2–20.2, 17–2–33 NMSA 1978 & 1984 Supp.

**4.** For example, the court found such guns to be "too inaccurate, unreliable, and poorly made for use by law enforcement personnel, sportsmen, homeowners or businessmen." 497 A.2d at 1158.

IT IS ORDERED, ADJUDGED AND DECREED that Defendants' motion to dismiss will be, and hereby is, granted.