Troy A. RICHARDSON,
Plaintiff-Appellant,

v.

Steve HOLLAND and Donald L. Bryant, Jr., Dennis C. Dunaway, Malcolm McNeill, O. Bruce Mills, John R. Musgrave, General Partners of SIIGCO, a General Partnership, d/b/a Sheraton Inn and Conference Center of Springfield, Missouri, Defendants,

F.I.E. Corporation,
Defendant-Respondent.

No. 15038.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 29, 1987.

Motion for Rehearing or Transfer Denied and Overruled Nov. 20, 1987.

Application to Transfer Denied Jan. 20, 1988.

William H. McDonald, Richard C. Miller, Douglas W. Greene, III, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for plaintiff-appellant.

John C. Shepherd, Paul N. Venker, Shepherd, Sandberg & Phoenix, P.C., St. Louis, for defendant-respondent.

MAUS, Judge.

In this action the plaintiff alleges he was intentionally shot by defendant Holland with a F.I.E. Derringer, Model D, .38 caliber handgun. Three counts of his petition seek recovery upon the basis of strict liability against F.I.E. Corporation (F.I.E.) as the manufacturer of that handgun. A fourth count against F.I.E. is based upon the allegation of negligent distribution. Other counts are against Holland and the motel at which he was shot.

Upon an appropriate motion, the trial court dismissed the four counts against the manufacturer. The order of dismissal was designated final. Rule 81.06. The dismissed counts stated a claim for recovery against the manufacturer upon a basis distinct from the basis of liability alleged against the other defendants. The order of dismissal designated final was appealable. *Southern States v. Southwest Missouri Bank*, 714 S.W.2d 956 (Mo.App.1986); *Yount v. Board of Education for City of St. Louis*, 712 S.W.2d 455 (Mo.App.1986).

The petition alleges the following basic facts applicable to all counts of that petition. On July 11, 1985, the plaintiff was attending a performance or show in an inn and conference center in Springfield. While on those premises, he was, without cause, shot in the abdomen by defendant Holland. He was shot when near a bar and restaurant operated in the inn and conference center. He was shot with a Derrin-

ger, Model D, .38 caliber handgun manufactured by defendant F.I.E. The plaintiff was seriously injured and damaged.

As stated, by four counts of the petition the plaintiff seeks recovery against F.I.E. upon alternate theories of liability. Each of these counts is premised upon the proposition that the Derringer manufactured by F.I.E. is a "Saturday Night Special." The Derringer is alleged to be a Saturday Night Special in that its principal use is for criminal activities and it has no legitimate value because: it is a small handgun with a short barrel and little or no accuracy; it is easily concealable; it is of inferior quality by reason of cheap materials and poor manufacturing; it is inexpensive; it is not accurate; and it cannot be used for legitimate activity such as target shooting, bench shooting, hunting, etc.

■ The sufficiency of each of the four counts to state a cause of action must be measured by generally applicable criteria. Those criteria include the following. A petition or a count must allege ultimate facts, as distinguished from conclusions, that establish the defendant's liability. *Meadows v. Friedman R.R. Salvage Warehouse*, 655 S.W.2d 718 (Mo.App.1983). Those allegations must include ultimate facts from which it can be found that a breach of duty by the defendant was the proximate cause of plaintiff's injury. *Nappier v. Kincade*, 666 S.W.2d 858 (Mo.App.1984); *Duke v. Gulf & Western Mfg. Co.*, 660 S.W.2d 404 (Mo.App.1983); 63 Am.Jur.2d Products Liability § 907 (1984). The petition does not allege any defect in manufacturing or design which caused the Saturday Night Special to malfunction. The decisive question is whether or not any count invokes a legal principle that causes the manufacturer of such a handgun to be per se liable for the plaintiff's injuries.

■ The allegations of Count IV are that F.I.E. is liable because the Derringer "was defective and unreasonably dangerous in that it belongs to a class of guns commonly referred to as 'Saturday Night Specials.'" He supports that allegation by the following argument. Restatement (Second) of Torts Section 402A (1965) was adopted as the law of this state in *Keener v. Dayton Electric Manufacturing Company*, 445 S.W.2d 362 (Mo.1969). Strict liability may result from a defect in design or in manufacturing. *Blevins v. Cushman Motors*, 551 S.W.2d 602 (Mo. banc 1977). In *Nesselrode v. Executive Beechcraft, Inc.*, 707 S.W.2d 371 (Mo. banc 1986), the Supreme Court rejected the consumer expectation test and the risk utility test for defining a defective product. He places his principal reliance upon the following statement from that case: "Under our model of strict tort liability the concept of unreasonable danger, which is determinative of whether a product is defective in a design case, is presented to the jury as an ultimate issue without further definition." *Nesselrode*, at 378 (footnote omitted). From this argument and statement he concludes, "Properly pleading that the product is defective and unreasonably dangerous is sufficient to create a prima facie case and to create a jury issue."

The sweeping scope of this statement demonstrates the fallaciousness of the plaintiff's position. It is not necessary to determine if *Nesselrode* rejects the two tests for use by the court in determining if the characteristics of a product provide a basis for a submissible case. The proposition underlying strict product liability is stated: "One who sells any product in a *defective condition* unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, ...." Restatement (Second) of Torts § 402A(1) (emphasis added).

It was not the intention of the drafters of § 402A to propose strict liability for all harm caused by the use of products. Nor was it their intention to propose liability for all harm caused by products that might be considered (by some) to be socially undesirable because of the hazards they pose when they are perfectly made. The liability they proposed then was limited to harm caused by products because there was 'some thing wrong' with them.

5 F. Harper, F. James, O. Gray, Law of Torts, Products Liability § 28.32A, p. 581 (2d ed. 1986) (footnotes omitted). In *Nesselrode* the design of the parts in question was defective in that they were not distinctively marked and could be easily interchanged. When so interchanged, those parts would seriously malfunction. The court found that in the absence of a warning, a jury could find that the parts so designed were unreasonably dangerous.

In this case the Derringer did not malfunction. Certainly there was no duty to warn anyone of the obvious, that the Derringer was inherently dangerous. *Riordan v. International Armament Corp.*, 132 Ill.App.3d 642, 87 Ill.Dec. 765, 477 N.E.2d 1293 (Ill.App. 1 Dist.1985); *Patterson v. Gesellschaft*, 608 F.Supp. 1206 (D.C. Tex.1985); *Armijo v. Ex Cam, Inc.*, 656 F.Supp. 771 (D.N.M.1987).

The cases uniformly hold that the doctrine of strict liability under the doctrine of 402A is not applicable unless there is some malfunction due to an improper or inadequate design or defect in manufacturing. "[A] product is in a 'defective condition' where the condition is one not contemplated by the ultimate consumer (Restatement (Second) of Torts Section 402A comment g (1965)), which condition causes the product to fail to perform in the manner reasonably to be expected in light of its nature and intended function." *Riordan v. International Armament Corp.*, supra, at 1298. "There can be no valid products liability claim without a product which has a defect." *Patterson v. Gesellschaft*, supra, at 1211. "Implicit in this analysis is the understanding that a product which has inherent and obvious dangers, which the average consumer would certainly recognize, is not 'defective,' merely because it was placed on the marketplace with such obviously dangerous propensities." *Armijo v. Ex Cam, Inc.*, supra, at 773.

> Similarly, a handgun is dangerous because its normal function is to propel bullets with deadly force. That alone is not sufficient for its manufacturer to incur liability under § 402A. For the handgun to be defective, there would have to be a problem in its manufacture or design, such as a weak or improperly placed part, that would cause it to fire unexpectedly or otherwise malfunction.

*Kelley v. R.G. Industries, Inc.*, 304 Md. 124, 497 A.2d 1143, 1148 (1985). Additional cases are listed in *Kelley*. Count IV, alleging a conclusion of unreasonably dangerous, does not state a cause of action.

Count V pleads that F.I.E. is liable because it "gave substantial assistance to defendant, Steve Holland," by the manufacture and sale of the Derringer. To support this allegation of liability, the plaintiff relies upon the following rule from the Restatement (Second) of Torts:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he....
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, *separately considered*, constitutes a breach of duty to the third person.

Restatement (Second) of Torts § 876 (emphasis added).

■ If this section is applied as it is construed by the plaintiff, it would extend liability to any injury caused by the product of a manufacturer whose product is often used in a manner to cause harm to others. An injury cannot be the basis for recovery unless there is an act of the defendant which is the proximate cause of that injury. The quoted section has not been adopted as the law in this state. *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241 (Mo. banc 1984). In any event, this section is authority for the fact that this count does *not* state a cause of action. The allegations of that count establish the act of F.I.E. in manufacturing the Derringer, *separately considered*, did not constitute a breach of duty to plaintiff.

■ It is alleged in Count VI that F.I.E. is liable because the manufacture and sale of the Derringer "constitutes an abnormally dangerous and/or ultrahazardous activity which subjects said defendant to absolute liability for any and all harm which results from the use and/or misuse of said handgun." To support this allegation, the plaintiff relies upon Restatement (Second)

of Torts § 519 and § 520 (1977). He cites the approval of those sections by *Bennett v. Mallinckrodt, Inc.*, 698 S.W.2d 854 (Mo. App.1985), cert. denied, 476 U.S. 1176, 106 S.Ct. 2903, 90 L.Ed.2d 989 (1986); and *Maryland Heights Leasing, Inc. v. Mallinckrodt, Inc.*, 706 S.W.2d 218 (Mo.App.1985). The theory of strict liability embodied in Restatement (Second) of Torts § 519 and § 520 stems from *Rylands v. Fletcher*, 1 L.R.–Ex. 265 (1866), aff'd, 3 L.R.–E. & I.App. 330 (1868).

As Prosser [Law of Torts § 78 (4th ed. 1971] explains, the 'true rule' of *Rylands v. Fletcher* is the limited rule. It makes the defendant liable 'when he damages another by a thing or activity unduly dangerous and inappropriate to the place where it is maintained, in the light of the character of that place and its surroundings.' Id. [Prosser, Law of Torts § 78] at 508. Sections 519 and 520, Restatement (Second) of Torts (1977), reflect this principle, with § 520 listing six factors pertinent in determining whether an activity is abnormally dangerous.

*Bennett v. Mallinckrodt, Inc.*, supra, at 867. It has also been observed, "the 'rule of *Rylands v. Fletcher'* is very narrowly applied in Missouri." Id. at 868.

That rule and said § 519 and § 520 have been considered in respect to handguns in numerous cases. The vast majority of those cases hold, "The activity must be an activity relating to land or to other immovables." *Perkins v. F.I.E. Corp.*, 762 F.2d 1250, 1267 (5th Cir.1985). Also see *Shipman v. Jennings Firearms, Inc.*, 791 F.2d 1532 (11th Cir.1986); *Armijo v. Ex Cam, Inc.*, supra; *Kelley v. R.G. Industries, Inc.*, supra.

A second limitation is, "The activity itself must cause the injury and the defendant must have been engaged directly in the injury-producing activity." *Perkins v. F.I.E. Corp.*, supra, at 1267. No case has been cited or found contrary to that limitation. It has been approved in cases such as the following: *Martin v. Harrington and Richardson, Inc.*, 743 F.2d 1200 (7th Cir. 1984); *Armijo v. Ex Cam, Inc.*, supra; *Coulson v. DeAngelo*, 493 So.2d 98 (Fla.

App. 4 Dist.1986); *Riordan v. International Armament Corp.*, supra.

Every decision in common law jurisdictions of which we are aware has held that the manufacture and sale of handguns to the general public does not constitute *an ultrahazardous activity.* See *Martin v. Harrington & Richardson, Inc.*, 7 Cir.1984, 743 F.2d 1200; *Patterson v. Rohm Gesellschaft*, N.D.Tex.1985, 608 F.Supp. 1206 [1985]; *Fiella v. Bangor Punta Corp.*, No. 756 of 1984 (Pa. C.P. Beaver County Feb. 7, 1985); *Moore v. R.G. Industries*, No. C–82–1417–MHR (N.D.Cal. Aug. 29, 1984); *Mavilia v. Stoeger Indus.*, D.Mass.1983, 574 F.Supp. 107; *Riordan v. International Armament Corp.*, No. 81 L 27923 (Pa. Cir.Ct. Cook County July 21, 1983), aff'd, Ill.Ct.App.1985, 132 Ill.App.3d 642, 87 Ill. Dec. 765, 477 N.E.2d 1293 [1985]; *Francis v. Diamond Int'l Corp.*, Nos. CV82–11–1279 & CV83–02–0215 (Ohio C.P. Butler County Mar. 22, 1983).

*Perkins v. F.I.E. Corp.*, supra, at 1266 f. 43 (emphasis added). For the reasons stated in these authorities, Count VI does not state a cause of action.

The allegations of Count VII again recite and embellish the characteristics of a Saturday Night Special. The basis alleged in that count for imposing strict liability upon F.I.E. is that it failed to warn of the dangers associated with the distribution of the handgun and failed to regulate or limit the distribution and sale of the handgun so as to prevent its use in criminal activities. This state has adopted statutes regulating the possession, manufacture and sale of firearms. §§ 571.020, 571.060 and 571.080, RSMo 1986. The same is true of most states. A conclusory allegation of a failure to regulate or limit the distribution of handguns invokes no duty of F.I.E. to the plaintiff. "[W]e hold that under *Linton [v. Smith & Wesson*, 127 Ill.App.3d 676, 82 Ill.Dec. 805, 469 N.E.2d 339 (1984)] the defendant, handgun manufacturers and distributors owed no duty to plaintiffs to control the distribution of its handguns, based upon the allegations of negligent and wilful and wanton distribution." *Riordan*

*v. International Armament Corp.*, supra, 87 Ill.Dec. at 768, 477 N.E.2d at 1296.

A further discussion of the merits of this count is not required. The count does not allege the manner in which Holland acquired the Derringer. He could have stolen it from the factory. There is no factual allegation from which it could be found that any act or failure to act on the part of F.I.E. in the distribution of the handgun could be the proximate cause of the plaintiff's injuries. Handguns and Products Liability, 97 Harv.L.Rev. 1912 (1984). Cf. *Patterson v. Gesellschaft,* supra.

Running throughout the plaintiff's brief is the contention that public policy requires that anyone feloniously shot with a Saturday Night Special be permitted to recover against the manufacturer of that handgun. He emphasizes that contention by an argument in support of Count IV. In that argument he states the following point: "As a matter of public policy, Missouri law should recognize that a 'Saturday Night Special' handgun is defective and unreasonably dangerous when put to its reasonably anticipated use, which is to injure or kill people." To support that point he relies upon *Kelley.* In *Kelley* the court recognized Saturday Night Specials as a distinct category of handguns. It found that such handguns have little or no legitimate value and that any countervailing social usefulness is negligible. The court concluded, "[W]e shall recognize a separate, limited area of strict liability for the manufacturers, as well as *all in the marketing chain,* of Saturday Night Specials." *Kelley,* at 1159 (emphasis added).

The rationale of that decision is not easy to follow. It relies upon statistics of the misuse of such handguns, but considers no statistics of its legitimate use. Yet, it recognizes such handguns have a value for self-defense. *Kelley v. R.G. Industries, Inc.,* supra. The basis for the decision cannot be the small size or concealability of the weapon. "A high-quality, small, short barrelled handgun, designed for such legitimate use, is not a Saturday Night Special, and the trier of facts should not be permitted to speculate otherwise." *Kelley,* at

1160. The apparent basis is the price of a Saturday Night Special. The decision has been characterized in the following language:

> This Court finds it unnecessary to engage in any lengthy discussion of the *Kelley* doctrine. To recognize such a cause of action in New Mexico would require an abrogation of the common law in a way bordering on judicial legislation.... All firearms are capable of being used for criminal activity. Merely to impose liability upon the manufacturers of the cheapest types of handguns will not avoid that basic fact. Instead, claims against gun manufacturers will have the anomalous result that only persons shot with cheap guns will be able to recover, while those shot with expensive guns, admitted by the *Kelley* court to be more accurate and therefore deadlier, would take nothing.

*Armijo v. Ex Cam, Inc.,* supra, at 775. The legislative nature of *Kelley* is emphasized by the fact the doctrine "will also apply to all other causes of action accruing after the date of our mandate in this case unless it is shown that the initial marketing of the Saturday Night Special to a member of the public, which will usually be the first sale of the gun by a retail gun dealer to a customer, occurred prior to the date of the mandate." *Kelley,* supra, at 1162. It is fundamental that the doctrine announced in *Kelley* does not require any attribute or characteristic of a Saturday Night Special be the proximate cause of the felonious shooting of a plaintiff.

The end result of that doctrine is to fasten strict liability upon the manufacturer and vendor of a lawful product because it is determined by an appellate court that the misuse of such a product outweighs its social value. If accepted, that doctrine can be applied to many products such as whiskey, fuzz busters, all-terrain vehicles and overpowered automobiles. *Martin v. Harrington and Richardson, Inc.,* supra. With the exception of *Kelley,* the courts of many states have unanimously held that the manufacturer of a handgun is not under strict liability to a person injured by the misuse or the criminal use of such a hand-

gun. *Martin v. Harrington and Richardson, Inc.,* supra; *Mavilia v. Stoeger Industries,* 574 F.Supp. 107 (D.Mass.1983); *De-Rosa v. Remington Arms Co., Inc.,* 509 F.Supp. 762 (E.D.N.Y.1981); *Bennet v. Cincinnati Checker Cab Co., Inc.,* 353 F.Supp. 1206 (E.D.Ky.1973); *Coulson v. DeAngelo,* supra; *Rhodes v. R.G. Industries, Inc.,* 173 Ga.App. 51, 325 S.E.2d 465 (1984); *Strickland v. Fowler,* 499 So.2d 199 (La.App. 2 Cir.1986); *Kelley v. R.G. Industries, Inc.,* supra; *Burkett v. Freedom Arms, Inc.,* 704 P.2d 118 (Or.1985); *Robertson v. Grogan Investment Co.,* 710 S.W.2d 678 (Tex.App.-Dallas 1986). This is true of decisions dealing specifically with weapons alleged to have the characteristics of a Saturday Night Special. *Shipman v. Jennings Firearms, Inc.,* supra; *Moore v. R.G. Industries, Inc.,* 789 F.2d 1326 (9th Cir.1986); *Perkins v. F.I.E. Corp.,* supra; *Armijo v. Ex Cam, Inc.,* supra; *Patterson v. Gesellschaft,* supra; *Riordan v. International Armament Corp.,* supra. Whether or not the individuals on this court, if members of the legislature, would vote to ban the manufacture of or impose strict liability upon the manufacturer of Saturday Night Specials is immaterial. The cited decisions establish that the plaintiff's petition does not, under judicial or common law principles, state a cause of action in strict liability or negligence against F.I.E. This court cannot create one by judicial legislation. *Patterson v. Gesellschaft,* supra; 19 Harv.L.Rev. 1912, supra. The judgment is affirmed.

HOGAN and FLANIGAN, JJ. concur.

PREWITT, P.J., dissents and files dissenting opinion.

PREWITT, Judge, dissenting.

I respectfully dissent. I would follow *Kelley v. R.G. Industries, Inc.,* 304 Md. 124, 497 A.2d 1143 (1985). I do not agree that the "end result" of finding such a cause of action "is to fasten strict liability upon the manufacturer and vendor of a lawful product because it is determined by an appellate court that the misuse of such a product outweighs its social value." The basis of *Kelley* is the almost sure knowledge of those who sell Saturday Night Specials "that the chief use of the product is for criminal activity." 497 A.2d at 1159.

The pleadings here allege a weapon that has not only the possibility of misuse, but a weapon where its manufacturer knows that its probable use is for improper and dangerous purposes. Many products such as alcohol, firearms and automobiles are often misused, but they are not designed and sold knowing that the majority of instances of use will be improper. According to the petition on which this case must be determined, the handgun used to shoot plaintiff had little, if any legitimate use, and a probable illegal use. Seeking to profit by helping create such activity should also create responsibility for the damages caused. A holding of potential liability here creates no danger to manufacturers or distributors of products which are legitimate but subject to improper use.

It is not unjust to have persons shot with "cheap" guns recover from the guns manufacturer when persons shot with other guns have no claim against the manufacturer. Because some persons shot with weapons may not be able to recover is no reason to deny recovery for those shot with weapons where the manufacturer knows that it is likely to be creating dangerous situations with little or no offsetting good. A manufacturer who placed such a product among the public "is certainly more at fault" than the innocent victim. *Kelley,* 497 A.2d at 1159.

Holding such a manufacturer liable would not be "judicial legislation" but the application of common law concepts to changes in society. It would allow the victims to recover from those that profit knowing that those profits are earned at the risk and expense of the innocent.

I respectfully dissent.