Thomas K. **DELAHANTY**, et al., Appellants,

v.

John W. **HINCKLEY**, Jr., et al.

No. 87-7055.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 19, 1988.

Decided April 29, 1988.

---

Frederic W. Schwartz, Jr., with whom Robert Cadeaux and James W. Taglieri, Washington, D.C., were on the brief, for appellants.

Frank G. Jones, with whom Peter A. White, Washington, D.C., was on the brief, for appellees.

Before MIKVA, EDWARDS and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

Concurring opinion filed by Circuit Judge STARR.

MIKVA, Circuit Judge:

On February 19, 1988, a panel of the United States Court of Appeals for the District of Columbia Circuit heard oral argument in *Thomas K. Delahanty, et al. v. John W. Hinckley, et al.*, No. 87–7055. It appears from the briefs and the oral argument that resolution of a question of District of Columbia ("the District") law is necessary to the decision in this appeal. We are asked to determine whether the District's courts wish to embrace a novel tort doctrine that, so far as we know, has not been presented to them and was only recently recognized in the neighboring state of Maryland.

A federal court sitting in diversity should normally decline to speculate on such a question of local doctrine. "Federal judges are disinclined to make bold departures in areas of law that we have no responsibility for developing." *Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1370 (7th Cir.1985). *See also Klingebiel v. Lockheed Aircraft Corp.*, 494 F.2d 345, 347 (9th Cir.1974) (describing as "doubtful" the "privilege of 'first guessing' what the California courts might do" on a new legal issue). In view of the District's recent adoption of a certification statute, however, we have the option of ascertaining the local court's own view of unresolved legal questions. *See* D.C. Code Ann. § 11–723 (Supp.1987). We conclude that this jurisdiction's own court should have an opportunity to determine whether the District follows the law of Maryland on the question described below.

The facts relevant to the issue certified are as follows. Thomas Delahanty is a District of Columbia policeman who was shot by John Hinckley, during the latter's attempted assassination of President Reagan. Delahanty and his wife sued the manufacturer and distributor of the gun Hinckley used: an inexpensive .22 caliber pistol with a two-inch barrel, known generically as a "Saturday Night Special." The suit sought recovery on various theories of negligence and strict liability. Subsequent to the filing of this lawsuit, the Maryland Court of Appeals—responding to the certification of a question by the United States District Court in Maryland—issued its opinion in *Kelley v. R.G. Industries*, 304 Md.

124, 497 A.2d 1143 (1985). The *Kelley* court concluded that "it is entirely consistent with public policy to hold the manufacturers and marketers of Saturday Night Special handguns strictly liable to innocent persons who suffer gunshot injuries from the criminal use of their products." *Id.* 497 A.2d at 1159.

Following the Maryland decision, Delahanty relied on *Kelley's* new cause of action to recover against the manufacturer of Hinckley's gun. However, in July 1986, the United States District Court for the District of Columbia dismissed all of Delahanty's claims pursuant to Fed.R.Civ.P. 12(b)(6). With respect to the claims based on *Kelley*, the trial judge specifically found "no corresponding theory in the District of Columbia and conclude[d] that such a theory would not be adopted in this jurisdiction." *Thomas K. Delahanty, et al. v. John W. Hinckley, et al.*, Nos. 82–409 *et al.*, memorandum op. at 22 (D.D.C. July 2, 1986).

■ In *Kelley*, Maryland's high court acknowledged that the cause of action that it established against manufacturers of Saturday Night Specials had not been recognized in any other jurisdiction. We nevertheless believe the District's Court of Appeals should have an opportunity to consider *Kelley's* impact on the law in this jurisdiction, for two reasons.

First, *Kelley's* strict liability theory was based on public policy considerations that, in turn, derived from statutes. "[T]he policy implications of the gun control laws enacted by both the United States Congress and the Maryland General Assembly," the court concluded, "reflect a governmental view that there is a handgun species, i.e., the so-called Saturday Night Special, which is considered to have little or no legitimate purpose in today's society." 497 A.2d at 1158. The District's gun control statute, D.C.Code Ann. § 6–2301 *et seq.* (1981), places limitations on handgun ownership and purchases that are at least as strict as the Maryland provisions concerning handgun possession, from which the *Kelley* court extrapolated its new doctrine.

Secondly, "because the District of Columbia was carved out of Maryland and derived its common law from that State[,] Maryland decisions, although not binding, are entitled to particular weight in this Court...." *Burke v. Washington Hospital Center*, 293 F.Supp. 1328 (D.D.C.1968). *See also White v. Parnell*, 397 F.2d 709 (D.C.Cir.1968) ("we look to the laws of Maryland for guidance when a question novel to our law is before us[, although this principle] does not demand blind allegiance, ... particularly as to the common law" (citing D.C.Code Ann. § 49–301)).

We therefore certify the following question to the District's Court of Appeals: Whether, in this jurisdiction, manufacturers and distributors of Saturday Night Specials may be strictly liable for injuries arising from these guns' criminal use.\* Two aspects of our certification may warrant clarification.

First, although we inquire only as to the particular cause of action recognized in *Kelley* (i.e. strict liability that is imposed solely on the manufacturers and distributors of Saturday Night Specials), we do not intend to restrict the District's Court of Appeals to a particular rationale for this cause of action. Indeed, *Kelley's* theoretical underpinnings are somewhat unclear. On the one hand, the *Kelley* court seemed to foreswear reliance on traditional tort doctrines, such as products liability and liability for ultrahazardous activities. 497 A.2d at 1159. On the other hand, the court drew an analogy between its own holding and a products liability decision of the Michigan Supreme Court based on negligence. *Id.* (citing *Moning v. Alfono*, 400 Mich. 425, 254 N.W.2d 759 (1977)).

The *Kelley* court also relied on the alleged fact that the harm caused by Saturday Night Specials greatly exceeds their

---

\* We note that *Kelley* has apparently been superseded by a new gun control law, enacted by the Maryland Legislature, which is aimed at Saturday Night Specials. *See* Washington Post, April 12, 1988, at A1, col. 5. The legislature's decision to revise public policy in Maryland, however, does not affect our inquiry about the state of the common law in the District of Columbia, prior to Maryland's statutory change.

utility. 497 A.2d at 1154. This finding mirrors a key aspect of both strict liability under products liability law and strict liability for ultrahazardous activities. *Compare, e.g.*, Turley & Harrison, *Strict Liability of Handgun Suppliers*, 6 Hamline L.Rev. 285 (1983) (proposing strict liability for handgun manufacturers under the product liability principles of Restatement (Second) of Torts § 402A (1964)) *with Martin v. Harrington and Richardson, Inc.*, 743 F.2d 1200, 1206 & n. 2 (7th Cir.1984) (Cudahy, J., concurring) (discussing possible strict liability of handgun manufacturers under the ultrahazardous activity principles of Restatement (Second) of Torts §§ 519–520 (1976)). We leave the District's Court of Appeals to determine the appropriate theoretical framework (or combination of frameworks) for evaluating the cause of action established in *Kelley*.

Secondly, it bears repeating that the purpose of this certification is to afford the District's Court of Appeals an opportunity to reassess this jurisdiction's law. Such a reassessment is permissive, not mandatory. Determining *whether* the common law should embrace a new cause of action entails, as well, a decision as to *when* such a change need be considered. Both decisions lie within the province of the local courts. Thus, the District's Court of Appeals need not fully evaluate *Kelley's* merits. That Court may well conclude that the District's law in this area does not require reappraisal at this time. If so, the Court of Appeals need only respond that the District does not currently recognize a cause of action such as the one set forth in *Kelley*.

STARR, Circuit Judge, concurring:

I concur fully in Judge Mikva's thoughtful opinion for the court. I write separately only to indicate that this course of action is, in my judgment, fitting and proper, notwithstanding the action of a prior panel (on which I served) in the closely related case of *Brady v. Hinckley*, (D.C.Cir.1987). Because our disposition in that case (a two-paragraph unpublished memorandum) does not constitute binding precedent, the case before us, albeit on all fours with *Brady* on the issue in question, has persuaded me that the better course in *Brady* would have been the tack we take today, namely, to refer this question to the highest court for the District of Columbia. Federal courts sitting in diversity are, of course, not infrequently called upon to divine the potential path that the common law of a particular jurisdiction may take. However, in view of the lively nature of the questions that have been brought before this court on at least two occasions, it seems better not to persist in our course of speculation and then to memorialize that speculative venture in a published opinion. Rather, the more orderly, and appropriately deferential course is the one set out in today's decision. If as a result of our reference to our colleagues on the Court of Appeals, any further action seems appropriate in the *Brady* case, then a reconstituted panel in that case can consider what, if any, steps should be taken consistent with appellate practice and procedure. But this action on our part should by no means be taken to signal or telegraph anything in respect of our reading of the law of the District of Columbia. Judge Mikva has expressed the point aptly in speaking for our court, and I join heartily in his statement that we take this action because of what seems appropriate under the circumstances. It is emphatically not the result of any unarticulated reading on our part of the law of torts in this jurisdiction.