Thomas K. DELAHANTY, et
al., Appellants,

v.

John W. HINCKLEY, Jr., et
al., Appellees.

No. 88–488.

District of Columbia Court of Appeals.

Argued July 13, 1989.

Decided Oct. 11, 1989.

Frederic W. Schwartz, Jr., with whom Robert Cadeaux and James Taglieri, Washington, D.C., were on the brief, for appellants.

Frank G. Jones, with whom Ben Taylor was on the brief, for appellees.

Before NEWMAN, FERREN and BELSON, Associate Judges.

FERREN, Associate Judge:

Thomas and Jean Delahanty, appellants, filed suit in the United States District Court for the District of Columbia against John Hinckley for injuries Thomas suffered when Hinckley attempted to assassinate President Ronald Reagan. The Delahantys also sued the manufacturer of the gun, R.G. Industries, Inc., its foreign parent company, Roehm, and individual officers of Roehm. Appellants advanced three legal theories for holding the gun manufacturers liable in these circumstances: negligence, strict products liability under the RESTATEMENT (SECOND) OF TORTS § 402A (1965), and a "social utility" claim apparently based on strict liability for abnormally dangerous activities under RESTATEMENT (SECOND) OF TORTS §§ 519, 520 (1977) and, somewhat differently, on the cause of action adopted in *Kelley v. R.G. Industries,* 304 Md. 124, 497 A.2d 1143 (1985). Appellants alleged in their complaint that: Hinckley needed an easily concealable weapon for his assassination attempt; the gun manufactured by Roehm and R.G. Industries, Inc., is an easily concealable, inexpensive handgun; the gun is poorly constructed, unreliable, and therefore not useful for legitimate purposes such as military use, target practice, or self-defense; as a result of the gun's low price, it is used for criminal purposes; and the manufacturers knew of the gun's criminal uses.

The District Court dismissed appellants' complaint against the gun manufacturers and their officers for failure to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). On appeal, the United States Court of Appeals for the District of Columbia Circuit sua sponte asked this court pursuant to D.C.Code § 11–723 (1989) to decide whether, in the District of Columbia, "manufacturers and distributors of Saturday Night Specials may be strictly liable for injuries arising from these guns' criminal use." *Delahanty v. Hinckley,* 269 U.S. App. D.C. 324, 326, 845 F.2d 1069, 1071 (1988) (footnote omitted). On consideration of this question, we conclude that traditional tort theories—negligence and strict liability under the RESTATEMENT (SECOND) OF TORTS—provide no basis for holding

the gun manufacturer liable. Moreover, we decline to adopt, for the District of Columbia, the theory of liability set forth in *Kelley*.

### I.

■ When considering a certified question, we are not limited to the designated question of law but may "exercise our prerogative to frame the basic issues as we see fit for an informed decision." *Penn Mutual Life Ins. Co. v. Abramson*, 530 A.2d 1202, 1207 (D.C.1987). The certifying court focused on whether this court would adopt the strict liability theory described in *Kelley* but noted that the "theoretical underpinnings are somewhat unclear" and that the certified question was not intended to restrict this court to a particular rationale for this cause of action. *Delahanty*, 269 U.S.App.D.C. at 326, 845 F.2d at 1071. Because appellants claim that they have not relied exclusively on the *Kelley* theory but have continued to advance in this court all the theories in their complaint, we expand our inquiry to include the question whether established theories of tort law in the District of Columbia provide a cause of action against gun manufacturers and distributors for injuries arising from the guns' criminal uses.

### II.

We reject each of the theories appellants have advanced in the federal courts and in this court.

### A.

■ Appellants first claim the manufacturers of the gun used by Hinckley are strictly liable for sale of a defective product. They rely on RESTATEMENT (SECOND) OF TORTS § 402A, which imposes liability for the sale of "any product in a defective condition unreasonably dangerous to the user or consumer...." We join the other courts which have rejected the application of this theory in circumstances such as these. *See Caveny v. Raven Arms Co.*, 665 F.Supp. 530, 532–33 (S.D.Ohio 1987), *aff'd*, 849 F.2d 608 (6th Cir.1988); *Armijo v. Ex Cam, Inc.*, 656 F.Supp. 771, 773 (D.N. M.1987), *aff'd*, 843 F.2d 406 (10th Cir.1988); *Coulson v. DeAngelo*, 493 So.2d 98, 99 (Fla.Dist.Ct.App.1986); *Riordan v. International Armament Corp.*, 132 Ill.App.3d 642, 649–51, 87 Ill.Dec. 765, 769–70, 477 N.E.2d 1293, 1298–99 (1985); *Kelley*, 497 A.2d at 1147–50; *Richardson v. Holland*, 741 S.W.2d 751, 753–54 (Mo.Ct.App.1987). Appellants point to no malfunction of the gun caused by improper design or manufacture that led to Thomas Delahanty's injuries. Instead, appellants argue that the manufacturers had a duty to warn of the dangers of criminal misuse of the gun. There is no duty to warn, however, "when the danger, or potentiality of danger, is generally known and recognized." RESTATEMENT (SECOND) OF TORTS, § 402A comment j. Because hazards of firearms are obvious, the manufacturer had no duty to warn. *See Richardson*, 741 S.W.2d at 754.

### B.

■ Appellants also present what they call a "social utility claim," arguing that the manufacturer should be held strictly liable because the type of gun in this case is "inherently and abnormally dangerous with no social value." Appellants appear to base this claim either on liability for abnormally dangerous activities, RESTATEMENT (SECOND) OF TORTS §§ 519, 520,[1] a

---

1. The RESTATEMENT (SECOND) OF TORTS §§ 519, 520 (1977) provides:

    519. General Principle
    (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he [or she] has exercised the utmost care to prevent the harm.
    (2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

    520. Abnormally Dangerous Activities
    In determining whether an activity is abnormally dangerous, the following factors are to be considered:
    (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
    (b) likelihood that the harm that results from it will be great;
    (c) inability to eliminate the risk by the exercise of reasonable care;
    (d) extent to which the activity is not a matter of common usage;

doctrine not yet explicitly adopted in the District of Columbia, or on a new cause of action similar to the one set forth in *Kelley.*

Like other courts that have considered the issue—and without regard to whether application of RESTATEMENT §§ 519, 520 may be appropriate in other contexts—we reject application of the "abnormally dangerous activity" doctrine to gun manufacture and sale. *See Shipman v. Jennings Firearms, Inc.,* 791 F.2d 1532, 1534 (11th Cir.1986); *Perkins v. F.I.E. Corp.,* 762 F.2d 1250, 1266–69 (5th Cir.1985); *Martin v. Harrington & Richardson, Inc.,* 743 F.2d 1200, 1203–05 (7th Cir.1984); *Caveny,* 665 F.Supp. at 531–32; *Armijo,* 656 F.Supp. at 774–75; *Coulson,* 493 So.2d at 99; *Riordan,* 132 Ill.App.3d at 648–49, 87 Ill.Dec. at 769, 477 N.E.2d at 1297; *Richardson,* 741 S.W.2d at 754–55; *Burkett v. Freedom Arms, Inc.,* 299 Or. 551, 704 P.2d 118 (1985); *Knott v. Liberty Jewelry & Loan, Inc.,* 50 Wash.App. 267, 274–75, 748 P.2d 661, 664–65 (1988).

Appellants argue that the marketing of the guns is the abnormally dangerous activity for which the manufacturers should be held liable. We cannot agree. The cause of action under RESTATEMENT § 519 applies only to activities that are dangerous in themselves and to injuries that result directly from the dangerous activity. *Perkins,* 762 F.2d at 1265 n. 43. "The marketing of a handgun is not dangerous in and of itself, and when injury occurs, it is not the direct result of the sale itself, but rather the result of actions taken by a third party." *Id.* Furthermore, handgun marketing cannot be classified as abnormally dangerous by applying the factors of RESTATEMENT § 520, see *supra* note 1. For example, any high degree of risk of harm, or any likelihood that such harm will be great, would result from the use, not the marketing as such, of handguns. *See Perkins,* 762 F.2d at 1265 n. 43. Finally, were

we to hold a manufacturer liable for gun marketing as an abnormally dangerous activity, we would improperly blur "the distinction between strict liability for selling unreasonably dangerous *products* and strict liability for engaging in ultrahazardous *activities* by making the sale of a product an activity." *Martin,* 743 F.2d at 1204 (emphasis in original); *see also Burkett,* 299 Or. at 556–58, 704 P.2d at 121 (citing cases). We are unwilling to do so.

■ We turn to *Kelley.* In framing their "social utility" claim, appellants do not directly refer to that decision. However, the cause of action they suggest—requiring proof that the danger of the product outweighs its social utility and that no legislative imprimatur be associated with the product to the contrary—tracks the new cause of action outlined in *Kelley.* 304 Md. at 144–61, 497 A.2d at 1153–61. The *Kelley* court found that although not all handguns were inconsistent with Maryland and federal public policy, a limited class of handguns, called "Saturday Night Specials," clearly were "not sanctioned as a matter of public policy." *Id.* 497 A.2d at 1153. The court also found that the characteristics of the Saturday Night Special made it "particularly attractive for criminal use and virtually useless for ... legitimate purposes...." *Id.* at 1154. Based on these findings, the *Kelley* court imposed liability on manufacturers for injuries inflicted by the criminal misuse of guns found to be "Saturday Night Specials." *Id.* at 1160.

Appellants' theory, as stated, is somewhat different from the *Kelley* theory and would require a jury determination about the social utility of the product rather than a court determination as a matter of law. The only reason appellants advance for their theory of liability, however, is the lack of social utility of a certain class of

---

(e) inappropriateness of the activity to the place where it is carried on; and
(f) extent to which its value to the community is outweighed by its dangerous attributes.
The First Restatement of Torts used the term "ultra hazardous activity" in describing the type of dangerous activities for which strict liability attaches. *See* KEETON, DOBBS, KEETON & OWEN,

PROSSER AND KEETON ON TORTS § 78, at 551 (1984). The Second Restatement of Torts changed the term to "abnormally dangerous activity" and then listed the six factors to be considered. *Id.* The choice between the labels is not important, and many courts use them interchangeably. *See Perkins,* 762 F.2d at 1255 n. 9.

inexpensive and allegedly unreliable handguns. In the context of this case, therefore—focusing on a particular class of handguns—appellants' argument is identical to the rationale adopted in *Kelley.* Both provide that the dangers of a certain class of handguns outweigh the social utility of the guns, justifying the imposition of liability on the manufacturers of the guns. Like other courts that have considered *Kelley* [2] (and thus the formulation appellants advocate), we decline to adopt such a cause of action in the District of Columbia. *See Caveny,* 665 F.Supp. at 533–35; *Armijo,* 656 F.Supp. at 775; *Richardson,* 741 S.W.2d at 756–57; *Knott,* 50 Wash.App. at 275–76, 748 P.2d at 665. Among the problems with the *Kelley* approach is its effort to justify liability for manufacturers of such a vaguely defined category of handguns: those that are cheap. As the court said in *Armijo,* 656 F.Supp. at 775 (emphasis in original):

> [C]reation of such a doctrine is extremely problematic insofar as *which* manufacturers would be held liable. All firearms are capable of being used for criminal activity. Merely to impose liability upon the manufacturers of the cheapest types of handguns will not avoid that basic fact. Instead, claims against gun manufacturers will have the anomalous result that only persons shot with cheap guns will be able to recover, while those shot with expensive guns, admitted by the *Kelley* court to be more accurate and therefore deadlier, would take nothing.

### C.

Finally, we reject appellants' negligence argument. "In general no liability exists in tort for harm resulting from the criminal acts of third parties, although liability for such harm sometimes may be imposed on the basis of some special relationship between the parties." *Hall v. Ford Enterprises, Ltd.,* 445 A.2d 610, 611 (D.C.1982); *see also Kline v. 1500 Massachusetts Ave. Apartment Corp.,* 141 U.S. App.D.C. 370, 375–76, 439 F.2d 477, 482–83 (1970) (relationships giving rise to a duty of protection include landlord to tenant, school district to student, employer to employee, and hospital to patient); *District of Columbia v. Doe,* 524 A.2d 30, 32 (D.C.1987) (school to student). We are not inclined to extend the rationale of these decisions to the present case. Appellants have alleged no special relationship with the gun manufacturers and have suggested no reasonable way that gun manufacturers could screen the purchasers of their guns to prevent criminal misuse.

### III.

In sum, given appellants' proffered theories, we perceive no basis under the facts alleged for holding the gun manufacturers and their officers liable under the law of the District of Columbia for Hinckley's criminal use of the gun.

---

2. The *Kelley* decision has been overridden by the Maryland legislature. *See* MD.ANN.CODE art.

3A, § 36–I(h) (1988 Supp).