LORETTO FLYNN RIORDAN, Indiv. and as Special Adm'r of the Estate of James J. Riordan, Deceased, Plaintiff-Appellant, v. INTERNATIONAL ARMAMENT CORPORATION *et al.*, Defendants-Appellees.—MARSHA BURKS, Indiv. and as Adm'r of the Estate of Alvin Burks, Deceased, Plaintiff-Appellant, v. SMITH & WESSON COMPANY, Defendant-Appellee.

First District (4th Division)   Nos. 83—2110, 83—2164 cons.

Opinion filed April 4, 1985.

Corboy & Demetrio, P.C., of Chicago (Philip H. Corboy, Ralph L. Brill, and David A. Novolselsky, of counsel), for appellants.

Haskell & Perrin, of Chicago (Donald M. Haskell and Brian H. Boyle, of counsel), for appellee Carl Walther Waffenfabrik, GmbH.

Philip C. Stahl and Daniel A. Edelman, both of Reuben & Proctor, of Chicago, for appellee International Armament Corporation.

Anne G. Kimball, James D. Fibber, and Cal R. Burnton, all of Wildman, Harrold, Allen & Dixon, of Chicago, for appellee Smith & Wesson Company.

· PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

These consolidated appeals present the issue of whether a cause of action in tort exists in Illinois against the manufacturers and distributors of handguns for injuries caused by the criminal misuse of their handguns by third parties.

On June 6, 1981, James J. Riordan was killed when, while attempting to restrain an individual in a downtown Chicago restaurant, he was struck by a bullet from a small caliber semiautomatic handgun manufactured and designed by defendant, Walther Waffenfabrik, GmbH, a West German corporation, and distributed in the United States by International Armament Corporation, also a defendant.

On December 26, 1981, Alvin Burks was shot to death by an assailant who was armed with a .38-caliber handgun designed, manufactured, and marketed by defendant, Smith & Wesson Company.

Wrongful death actions were filed by the plaintiffs, the wives and children of the decedents in the circuit court of Cook County against the manufacturers and distributors of the handguns used in the shootings. Plaintiffs sought recovery under theories of negligence, strict liability based on ultrahazardous activities, and strict liability for a defective product.

Motions to dismiss were filed by the defendants, handgun manufacturers and distributors, in each case. (Ill. Rev. Stat. 1983, ch. 110, par. 2—615.) Thereafter, after hearings on the respective motions, the complaints in both cases were dismissed as insufficient in law.

These appeals were subsequently consolidated by this court.

■ Plaintiffs first assert that the trial court erred in dismissing those counts charging the defendants, handgun manufacturers and distributors, with negligent and wilful and wanton distribution. Plaintiffs alleged that based on the large number of injuries and deaths resulting from the use of handguns to commit crimes, criminal misuse was foreseeable and the defendants, handgun manufacturers and distributors, were negligent in marketing their handguns to the general public without taking adequate precautions to prevent the sale of their handguns to persons who were reasonably likely to cause harm to the general public. Plaintiffs claim that the defendants, handgun manufacturers and distributors, had a duty to determine whether their retailers had taken all reasonable measures to screen prospective purchasers and a duty to terminate sales to those retailers the defendants knew or had reason to know had a history of sales to persons who had used their handguns in crime.

This court recently rejected a claim identical to the plaintiffs' in

*Linton v. Smith & Wesson* (1984), 127 Ill. App. 3d 676, 469 N.E.2d 339, *appeal denied* (1984), 101 Ill. 2d 582. We find *Linton* to be dispositive of this issue. In *Linton*, the plaintiff appealed from the dismissal of his counts seeking recovery from a handgun manufacturer based on its negligent and wilful and wanton distribution of a handgun which was used by a third party to injure the plaintiff. This court upheld the dismissal of the plaintiff's complaint on the basis that under Illinois law no common law duty exists upon the manufacturer of a nondefective handgun to control the distribution of that product to the general public. 127 Ill. App. 3d 676, 678-79, 469 N.E.2d 339.

The court found that the plaintiff's reliance on *Semeniuk v. Chentis* (1954), 1 Ill. App. 2d 508, 117 N.E.2d 883, which the plaintiffs in the present case cite as their sole Illinois authority to support their contention, was misplaced. *Semeniuk* held that a retail seller of toy weapons to children was liable for injuries resulting to others from the child's misuse of the toy. Citing section 308 of the Restatement (Second) of Torts, the *Semeniuk* court found that as children who, because of their youth and inexperience, are incapable of appreciating the risk inherent in the use of such products, a reasonable seller, exercising ordinary care, would anticipate or foresee that a child would misuse the product, thereby causing harm to bystanders. (*Semeniuk v. Chentis* (1954), 1 Ill. App. 2d 508, 512-14, 117 N.E.2d 883.) The situation in the present case, the *Linton* court found, was distinguishable from *Semeniuk*, where misuse of the product was not a foreseeable consequence of sales to the general public. Unlike the case with children, the distribution of handguns by the defendants-manufacturers was intended for the general public, who presumably can recognize the dangerous consequences in the use of handguns and can assume responsibility for their actions. (*Linton v. Smith & Wesson* (1984), 127 Ill. App. 3d 676, 678, 469 N.E.2d 339.) As the court in *Linton* pointed out, the distribution of firearms is heavily regulated on both the Federal and State levels. (See 18 U.S.C. sec. 921 *et seq.* (1976); Ill. Rev. Stat. 1983, ch. 38, par. 83—1 *et seq.*) Beyond this, the court stated, there is no basis for imposing common law negligence upon a handgun manufacturer for injuries sustained by the victims of illegal handgun violence. (*Linton v. Smith & Wesson* (1984), 127 Ill. App. 3d 676, 679, 469 N.E.2d 339.) Furthermore, as the *Linton* court observed, as the *Semeniuk* decision dealt only with the liability of a retail seller, *Semeniuk* provides no support for likewise holding a manufacturer or remote vendor liable for marketing its product to people whom they should have known would have misused the product. *Linton v. Smith*

*& Wesson* (1984), 127 Ill. App. 3d 676, 678, 469 N.E.2d 339, citing *Pitts v. Basile* (1966), 35 Ill. 2d 49, 54, 219 N.E.2d 472.

Similarly unpersuasive are plaintiffs' out-of-State authorities, which imposed liability upon those who negligently entrusted or supplied dangerous weapons to classes or persons incapable of using the product in a safe manner, *i.e.*, children. (*Moning v. Alfono* (1977), 400 Mich. 759, 254 N.W.2d 759; *Stoelting v. Hauck* (1960), 32 N.J. 87, 159 A.2d 385.) *Moning*, a 1977 decision of the Michigan Supreme Court, held that a manufacturer, wholesaler and retailer of toy slingshots, which were marketed directly to children, owed a legal obligation of due care to bystanders affected by the use of such products. *Stoelting* involved the liability of parents to an injured third party for the negligent entrustment of a firearm to their minor child.

Accordingly, as there is no support for the plaintiffs' theory in Illinois, we hold that under *Linton* the defendants, handgun manufacturers and distributors, owed no duty to plaintiffs to control the distribution of their handguns, based upon the allegations of negligent and wilful and wanton distribution. Consequently, these counts were properly stricken as being insufficient as a matter of law.

■ Similarly, we find no error in the dismissal of plaintiffs' counts alleging negligent failure to warn. In their complaints, plaintiffs alleged that the defendants, manufacturers and distributors of handguns, had the duty to provide adequate warnings to consumers that possession of a handgun is dangerous and that concealed possession of a handgun is illegal under State and Federal law.

■ Plaintiffs initially assert that the duty to warn of a product's dangerous propensities may be imposed upon manufacturers and distributors. Although Illinois courts have held that the failure to warn may be imposed upon all parties within the chain of distribution for strict liability in tort (*Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 454 N.E.2d 210; *Venus v. O'Hara* (1984), 127 Ill. App. 3d 19, 468 N.E.2d 405), this argument does not answer the critical question here, that is, whether a warning is necessary in this case.

■ Section 388 of the Restatement (Second) of Torts (1965), which governs the duty to warn in a negligence action, provides, in relevant part:

> "One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which

and by a person for whose use it is supplied, if the supplier

* * *

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition ***." (Restatement (Second) of Torts sec. 388(b) (1965).)

Comment k, under this section, further states that where the supplier "has no reason to expect that those for whose use the chattel is supplied will discover its [dangerous] condition and realize the danger involved," no requirement of warnings is necessary. (Restatement (Second) of Torts sec. 388 comment k (1965).) Thus, a supplier is absolved from liability where the dangerous condition is one which a consumer would be expected to realize. In strict liability actions alleging failure to warn, it has been held in Illinois that warnings are unnecessary where the injury results from a common propensity of the product which is open and obvious. *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465; *Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 402 N.E.2d 194; see Restatement (Second) of Torts sec. 402 A, comment j (1965).

Because the purpose of a warning is to apprise the user or consumer of a danger of which he or she is not aware of, so that he or she can protect himself or herself against it, no duty to warn arose in the present case, as the dangers of illegal handgun misuse were obvious and open conditions that a manufacturer or distributor would have no reason to expect that a reasonable consumer or user would not realize. As such, the dismissal of this claim was appropriate.

Plaintiffs next argue that the trial court erred in dismissing their counts which sought to impose strict liability upon the defendants, handgun manufacturers and distributors, on the basis that the manufacturing and marketing of handguns to the general public constituted engagement in an ultrahazardous or abnormally dangerous activity.

While Illinois has long recognized strict liability for damages caused by engaging in an abnormally dangerous or ultrahazardous activity (*e.g., City of Joliet v. Harwood* (1877), 86 Ill. 110 (blasting); *Clark v. City of Chicago* (1980), 88 Ill. App. 3d 760, 410 N.E.2d 1025 (demolition); *Opal v. Material Service Corp.* (1956), 9 Ill. App. 2d 433, 133 N.E.2d 733 (storage of dynamite)), the plaintiffs have cited no Illinois cases in which the mere manufacture or sale of a product, as opposed to the actual use of that product, has been held to constitute an activity that is abnormally dangerous or ultrahazardous, giving rise to strict liability in tort.

Nevertheless, the plaintiffs urge this court to adopt the holding of

the only case that supports the plaintiffs' position, *Richman v. Charter Arms Corp.* (E.D. La. 1983), 571 F. Supp. 192, which held that the manufacture and sale of nondefective handguns to the general public should be treated as an abnormally dangerous or ultrahazardous activity warranting strict liability recovery. However, we have found no decision other than *Richman* that has held that the lawful sale of a nondefective product can be an ultrahazardous activity.

Most recently, the Seventh Circuit in *Martin v. Harrington & Richardson, Inc.* (7th Cir. 1984), 743 F.2d 1200, which considered this issue, applying Illinois law, failed to adopt the conclusion reached in *Richman*. We agree with the Seventh Circuit's observation in *Martin* of the logical inconsistency of the *Richman* court's analysis. As the court in *Martin* pointed out, the *Richman* court blurred the distinction between strict liability for selling unreasonably dangerous products, which requires a defect in the product, and strict liability for engaging in an ultrahazardous activity by making the sale of a product an activity. This conclusion, the *Martin* court reasoned, is not only erroneous, but, more importantly, would run counter to Illinois' longstanding requirement that strict liability for the sale of a product be limited to unreasonably dangerous products. *Martin v. Harrington & Richardson, Inc.* (7th Cir. 1984), 743 F.2d 1200, 1204.

As it is not the manufacture and sale of handguns that is ultrahazardous, but their use or misuse that is alleged in plaintiffs' claim here, the plaintiffs have no grounds for recovery under the doctrine of strict liability for engaging in ultrahazardous activities. To accept plaintiffs' contention, we would be considerably extending the ultrahazardous activity theory far beyond its accepted meaning. As there is no support for plaintiffs' proposition in Illinois law, dismissal of these counts was proper.

Finally, the plaintiffs contend that the dismissal of their counts alleging strict liability in tort for a defective product was erroneous. Plaintiffs alleged that the defendants' handguns were defectively designed in that they were small, easily concealable, relatively inexpensive, and served no useful social purpose.

Illinois follows the formulation set forth in section 402 A of the Restatement (Second) of Torts (1965), which imposes strict liability for defective products upon one "who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property." (Restatement (Second) of Torts sec. 402 A (1965); *Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 319 N.E.2d 232.) Under Illinois law, a product is in a "defective condition" where the condition is one not contemplated by the ultimate consumer (Restate-

ment (Second) of Torts sec. 402 A, comment g (1965)), which condition causes the product to fail to perform in the manner reasonably to be expected in light of its nature and intended function. (*Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 342, 247 N.E.2d 401; Illinois Pattern Jury Instruction (IPI), Civil, No. 400.06 (2d ed. Supp. 1977).) Illinois applies a "consumer expectation" test, whereby a defective condition of a product will be considered "unreasonably dangerous" when it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." (*Palmer v. Avco Distributing Corp.* (1980), 82 Ill. 2d 211, 216, 412 N.E.2d 959, quoting Restatement (Second) of Torts sec. 402 A, comment i (1965).) Thus, to recover under strict liability in tort for defective products, a plaintiff must prove that an unreasonably dangerous condition existed in the product, that the condition existed at the time the product left the manufacturer's control, and that the condition was a proximate cause of the plaintiff's injury or damage. *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182; Illinois Pattern Jury Instruction, IPI Civil 2d, No. 400.01 (Supp. 1977).

■■■ Plaintiffs have failed to meet this test. The alleged design defects of size and concealability of the defendants' handguns were not conditions which caused the handgun to fail to perform in the manner reasonably to be expected in light of its nature and intended function. Other courts which have considered this issue have rejected the plaintiffs' argument. *Martin v. Harrington & Richardson, Inc.* (7th Cir. 1984), 743 F.2d 1200, 1203; *Mavilia v. Stoeger Industries* (D. Mass. 1983), 574 F. Supp. 107, 110-111; *Richman v. Charter Arms Corp.* (E.D. La. 1983), 571 F. Supp. 192, 197; *DeRosa v. Remington Arms Co.* (E.D. N.Y. 1981), 509 F. Supp. 762; *Bennet v. Cincinnati Checker Co.* (E.D. Ky. 1973), 353 F. Supp. 1206, 1210.

Moreover, the plaintiffs' challenge regarding the handgun's size and concealability is not an attack upon a design defect innate to the particular models of handguns used to kill the plaintiffs' decedents. Rather, plaintiffs are claiming in effect that all small, concealable handguns are defectively designed. However, the plaintiffs have cited no Illinois decision in which it has been held that an entire product line may be held to be defectively designed where the plaintiff's injury was caused by that product's operation precisely as it was designed to operate.

■■■ Notwithstanding our conclusion above, the plaintiffs urge this court to adopt the risk/benefit test set forth in *Barker v. Lull*

*Engineering Co.* (1978), 20 Cal. 3d 413, 573 P.2d 443, 143 Cal. Rptr. 225, upon which the plaintiffs principally rely. Aside from whether Illinois has discarded the "consumer expectation" test in favor of a risk/ benefit analysis as the plaintiffs contend, we conclude that the result in this case would be the same. Under *Barker*, a product may be found defective in design if the plaintiff demonstrates that the product's design proximately caused his injury and the defendant fails to establish, in light of such factors as the gravity and likelihood of danger, the feasibility of safer alternative designs, the financial cost of improved design and the adverse consequences of an alternative design, that the benefits of the challenged design outweigh the risk of danger inherent in such design. (*Barker v. Lull Engineering Co.* (1978), 20 Cal. 3d 413, 432, 573 P.2d 443, 456, 143 Cal. Rptr. 225, 238.) However, the plaintiff in *Barker* alleged particular defects in the construction of a forklift truck, and argued that not all forklift trucks are inherently defective, but that the particular design of one type of forklift truck was defective. In contrast, the plaintiffs here contend that all handguns, or at least all small, concealable, relatively inexpensive handguns, are defectively designed. In essence, plaintiffs complain not of the product's particular design, but of the product itself. Because plaintiffs challenge the entire line of small, concealable handguns, the *Barker* factors to show that changes in this particular type of small handguns are unreasonably dangerous, given the availability of alternative designs, are inapplicable.

Accordingly, as we are unable to find a duty upon which the liability of the defendants, handgun manufacturers and distributors, may be premised, the order of the circuit court of Cook County granting the defendants' motion to dismiss the plaintiffs' complaints for failure to state a cause of action is affirmed.

Affirmed.

LINN and ROMITI, JJ., concur.