**Nell J. SHIPMAN, as Personal Representative of Estate of Linda Marie Barach, deceased, Plaintiff-Appellant,**

v.

**JENNINGS FIREARMS, INC., Defendant-Appellee.**

No. 85–5427.

United States Court of Appeals, Eleventh Circuit.

June 25, 1986.

Corrected.

Darrell Panethiere, Law Offices of Windle Turley, Dallas, Tex., James E. Rooks, Jr., Law Offices of Windle Turley, Washington, D.C., for plaintiff-appellant.

Lewis N. Jack, Jr., Coral Gables, Fla., for defendant-appellee.

Before FAY, Circuit Judge, HENDERSON * and NICHOLS **, Senior Circuit Judges.

## HENDERSON, Circuit Judge:

This is an appeal from the grant of a summary judgment in favor of the defendant-appellee, Jennings Firearms, Incorporated (Jennings) by the United States District Court for the Southern District of Florida. It arises from the death of Linda Barach who was shot and killed by her husband, who used a small, .22 caliber pistol—a so-called "Saturday Night Special"—to effect the homicide. The pistol was manufactured and distributed by Jennings. The plaintiff-appellant, Nell J. Shipman, as the personal representative of Mrs. Barach's estate, sought recovery from Jennings premised on novel applications of strict products liability, negligence and ultrahazardous activity theories.

Shipman claimed that although the pistol had no design defects and performed exactly as intended, Jennings nevertheless is subject to strict products liability for manufacturing and distributing a product that is unreasonably dangerous. This theory relies on the view that the societal risks inherent in the gun outweigh the societal benefits of the product. Shipman also maintained that Jennings was strictly liable on the ground that the manufacture and sale of handguns like the one used to kill Mrs. Barach is an ultrahazardous or abnormally dangerous activity. This doctrine, which is grounded in §§ 519–20 of the Restatement (2d) of Torts (adopted in *Cities Service v. State*, 312 So.2d 799 (Fla.App. 1975)), imposes strict liability on those whose ultrahazardous use of their land injures neighboring landowners. *See Rylands v. Fletcher*, L.R. 3 H.L. 330 (1868); *Bunyak v. Yancey & Sons Dairy, Inc.*, 438 So.2d 891 (Fla.App.1983). Finally, Shipman sought recovery for failure to exercise reasonable care in marketing its weapons; i.e., it distributed guns to persons, such as Barach, without regard for possible misuse by the purchaser. This view of negligence is predicated on finding that the purchaser was not a legally intervening cause of the injury. The United States District Court for the Southern District of Florida granted summary judgment for Jennings and this appeal followed.

The Florida District Court of Appeal for the Third District specifically addressed and rejected two of these arguments recently. *See Trespalacios v. Valor Corp.*, 486 So.2d 649 (Fla.App.1986). The *Trespalacios* court held that Florida law

---

* *See* Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Philip Nichols, Jr., U.S. Circuit Judge for the Federal Circuit, sitting by designation.

will not apply the theories of strict products liability and negligence to a gun manufacturer who produces and distributes weapons that perform as intended and designed. We are bound by this Florida appellate decision, *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■ The court in *Trespalacios* did not specifically address Shipman's argument that the manufacture and sale of the handgun was such an ultrahazardous and inherently dangerous activity as to create strict liability. The few Florida cases that have dealt with the ultrahazardous activity doctrine all have applied it to impose strict liability for damages resulting from activities which occur on land and pose an unusual and unnecessarily high risk of harm to neighboring land owners and their property. *See Bunyak v. Yancey & Sons Dairy, Inc.*, 438 So.2d 891 (Fla.App.1983); *Hutchinson v. Capeletti Brothers, Inc.*, 397 So.2d 952 (Fla.App.1981); *Cities Service Co. v. State*, 312 So.2d 799 (Fla.App. 1975). It is clear that the ultrahazardous activity doctrine is inapposite to these facts under Florida law. Other jurisdictions that have considered this issue are in accord. *See Kelley v. R.G. Industries, Inc.*, 304 Md. 124, 497 A.2d 1143, 1146–47 (1985); *Riordan v. International Armament Corp.*, 132 Ill.App.3d 642, 87 Ill.Dec. 765, 769, 477 N.E.2d 1293, 1297 (1985); *Perkins v. F.I.E. Corp.*, 762 F.2d 1250, 1268 (5th Cir.1985); *Martin v. Harrington & Richardson, Inc.*, 743 F.2d 1200, 1203–04 (7th Cir.1984).

AFFIRMED.

NICHOLS, Senior Circuit Judge, concurring:

I join in the opinion and judgment of the court, but I wish to explain my position at some further length.

This action by a Florida resident against a foreign (California) corporation, is founded wholly on state law and is in the federal courts wholly because of diversity of citizenship, 28 U.S.C. § 1332. It was not removed, it was originally filed in the United States District Court. In light of Judge Henderson's clear analysis, it is apparent that plaintiff-appellant's hopes of success now are, and must always have been, dependent on finding some court willing to take it on itself to alter the common law of Florida, as previously stated in judicial opinions. It is true that in recent years the old idea that common law courts are bound by their own precedents is sadly eroded. The modern or with-it view is that any doctrine originally established by courts can be modified or repealed by courts. I have no reason to think the Supreme Court of Florida does not share in this almost universal American position.

The duty of federal courts deciding common law cases under diversity would seem to be, if changes in state law are to be made, to leave it to the state courts (or, of course, legislature), to make them. To take the lead would be contrary to the teaching of *Erie Railroad Co. v. Tompkins*, appropriately cited and followed in the majority opinion, and indeed would be an outrageous imposition on the right of the people of Florida to make their own laws and interpret or enforce them through institutions of their own creation.

In face of these self-evident facts, one wonders why this suit was brought in a federal and not in a state court, when either would have been permissible. True, Jennings might have removed a state court case. Plaintiff, however, might then, with some dignity, have requested that the federal court certify the question of state law to the state court for an answer. Having, herself, elected the wrong court from the point of view of receptiveness to proposals to change the common law, it is without any dignity at all that plaintiff now moves to have the case certified. Instead of forum shopping, this is forum hopping. I suppose plaintiff must have calculated some benefit to herself in approaching the

Florida Supreme Court indirectly instead of directly. There is no benefit, but detriment to the public and to the judicial system, in prolonging and complicating the route of this rather open-and-shut litigation through multiple courts.

Whatever the strategy is, it apparently had its counterpart in Illinois. I find the discussion by Judge Pell in *Martin v. Harrington and Richardson,* 743 F.2d 1200 (7th Cir.1984) very much in point. There, too, a request for certification was denied, the court, as we do, treating a decision of an intermediate appellate court of the state as sufficient to establish what the state law is. I share also Judge Cudahy's concurring views about how future tort law might develop, but agree with him that our analysis must end with what the state law is now.