Tricia KEENE, Individually, and Tricia Keene, as Next Friend for the Estate of Brandon Preston, Plaintiff,

v.

STURM, RUGER & COMPANY, INC., Defendant.

No. Civ.A. 1:99CV323.

United States District Court, E.D. Texas, Beaumont Division.

Nov. 7, 2000.

Mark O Midani, Midani & Associates, Houston, TX, for plaintiff.

Edward H Green, Mitchell A Toups, Steven Christopher Toups, Weller Green Toups & Terrell, Beaumont, TX, James P Door, Steven E Danekas, Wildman Harrold Allen & Dixon, Chicago, IL, for defendant.

### MEMORANDUM OPINION

COBB, District Judge.

In this handgun wrongful death case, Tricia Keene ("Plaintiff") sues Sturm, Ruger, & Company, Inc. ("Defendant" or "Ruger") for the death of her 10–year old son, Brandon Preston, which she alleges was caused by a handgun manufactured by Defendant. Brandon was accidentally shot by his best friend, Jeremiah Hopkins, who was 12 years old at the time. Plaintiff alleges that Defendant (1) negligently and defectively designed its firearms and ammunition and (2) failed to warn consumers that its firearms and ammunition were unreasonably dangerous in the hands of foreseeable users, including children. Defendant moves for summary judgment on all

claims. First, Defendant argues that Plaintiff's allegations of negligent and defective design must fail because the firearm in question functioned as an ordinary consumer of firearms would expect it to function. Second, Defendant contends that it had no duty to warn of the open and obvious danger of a loaded firearm. After reviewing the evidence in this diversity action, the Court GRANTS Defendant's motion on both grounds because Plaintiff has not shown, as required under Texas law, that Defendant's revolver failed to function as an ordinary consumer of firearms would expect it to function or that Defendant had a duty to warn of the open and obvious danger of a loaded firearm. The Court presents the facts in the light most favorable to the plaintiff.

## I. *Facts*

The material facts in this case are tragic, but not disputed. Defendant is a manufacturer and seller of firearms and ammunition. It manufactures the single-action New Model Blackhawk revolver. One of these revolvers was purchased by David LeBlanc from a gun shop in Nederland, Texas. That revolver is at the center of this lawsuit.

Leblanc and his wife, Shirley, kept the revolver on the top shelf of their bedroom closet in an unlocked metal case. The case could have been locked, but LeBlanc had lost the key. On March 29, 1997, Leblanc's stepson, 12-year old Jeremiah Hopkins and Jeremiah's friend, 10-year old Brandon Preston, were at LeBlanc's home enjoying Easter vacation. Neither LeBlanc or his wife were home at the time. Ostensibly searching for binoculars to aid them in birdwatching, the boys entered LeBlanc's bedroom and went to the corner of the top shelf in the closet where the binoculars were kept. While looking for the binoculars, Jeremiah came across the metal case containing the revolver. He removed the revolver from the case, wanting to see how it worked. He "cocked" back the hammer, and as he was attempting to "uncock" it, his finger slipped off the trigger guard and squeezed the trigger.

The gun discharged precisely as it was designed to do, sending a bullet into Brandon's chest. Brandon was dead within a few minutes.

Plaintiff Tricia Keene, individually and as next friend for the estate of Brandon Preston, brings this suit against Defendant on several grounds. She argues that "[i]n addition to other unreasonably dangerous design features, lack of safety features, and inadequate warnings ... Defendant's firearms are unreasonably dangerous because they can be and are fired by unauthorized users, including but not limited to children, criminals, mentally unstable persons and others who put themselves and others at risk when they possess such a firearm." (Pl.'s Original Pet. ¶ 9.) The thrust of Plaintiff's complaint is that Defendant's revolver should have been equipped with trigger locks or some other safety feature that would have prevented it from being fired by a 12-year old child.

Plaintiff specifically alleges that Defendant negligently and defectively designed its firearms and ammunition and that Defendant failed to warn consumers of the risks and dangers of guns. Defendant moves for summary judgment on these claims.

## II. *Analysis*

Defendant moves for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure on two grounds. First, Defendant argues that under the Texas Products Liability Act, *see* Tex.Civ. Prac. & Rem.Code § 82.006 (Vernon 1997), Plaintiff's claim of negligent design and defective design must be dismissed because the revolver functioned as an ordinary consumer of firearms would expect it to function. (Def.'s Mot.Summ.J. at 11.) Second, Defendant contends that Plaintiff's failure to warn claims must be dismissed because Defendant had no duty to warn of the open and obvious danger of a loaded firearm. Because a federal court sitting in diversity must ordinarily apply the applicable and controlling state substantive law, *see Erie R.R. v. Tompkins,* 304 U.S. 64, 78,

58 S.Ct. 817, 82 L.Ed. 1188 (1938), this Court must apply the substantive law of the State of Texas to the parties' claims. The Court begins by discussing the standards by which Defendant's motion will be evaluated, which, of course, are governed by federal law.

## A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure allows a court to grant summary judgment on issues presenting no genuine issue of material fact. Summary judgment is appropriate when "the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment bears the initial burden of informing the court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has properly supported its motion, the burden shifts to the party opposing summary judgment to demonstrate genuine issues of material fact necessitating a trial, using the evidentiary sources set forth in Rule 56(c). *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The proof must be of such quality that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 586–87, 106 S.Ct.

1348. Finally, the Court will decide all reasonable doubts and inferences in the light most favorable to the party opposing the motion. *See Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir. 1994). With these standards in mind, the Court now turns to the parties' arguments.

## B. Negligent and Defective Design

■ Plaintiff alleges that Defendant's firearm and ammunition were negligently and defectively designed. Because Plaintiff has failed to produce some evidence that Ruger's firearm "did not function in a manner reasonably expected by an ordinary consumer of firearms or ammunition," Tex.Civ.Prac. & Rem.Code § 82.006(a)(1), the Court dismisses both claims.

Plaintiff first contends that Defendant breached its "duty to design and manufacture its firearms and ammunition so that the they would be reasonably safe for their intended use and for other uses that were reasonably foreseeable ... by failing to employ alternative designs and/or safety devices, including, but not limited to, alternative designs and/or safety devices that would have (a) [p]revented such firearms from being fired by unauthorized users; (b) [a]lert users that a round was in the chamber; and (c) [p]revented such firearms from being fired when the magazine was removed to them." (Pl.'s Original Pet. ¶ 22.) This is Plaintiff's negligence claim.

Plaintiff next alleges that "[t]he firearms and ammunition manufactured and/or distributed by Defendant ... contained defects and were defectively designed, so as to be unreasonably dangerous to those in the vicinity of its reasonably foreseeable use because the firearms and ammunition did not include alternative designs and/or safety devices, including, but not limited to, alternative designs and/or safety devices that would have (a) [p]revented such firearms from being fired by unauthorized users; (b) [a]lert users that a round was in the chamber; and (c) [p]revented such firearms from being fired when the magazine was removed to them." (Pl.'s Original

Pet. ¶ 25.) This is Plaintiff's defective design claim.

Defendant makes a two part argument that it contends defeats both of Plaintiff's claims. First, both the negligence and product defect claim are products liability actions under Texas law. Second, under Texas products liability law, Plaintiff must prove, in addition to any other elements, that the actual design of the firearm was defective, and that this defect caused the firearm not to function in a manner reasonably expected by an ordinary consumer. (Def.'s Mot.Summ.J. at 11.) Because Plaintiff has not shown that Defendant's revolver was defectively designed or that it failed to function as an ordinary consumer of firearms would · expect, Defendant concludes, the Court must dismiss Plaintiff's claims.

Texas law makes it difficult for plaintiffs to succeed in cases against manufacturers of firearms. *See* Tex.Civ.Prac. & Rem. Code Ann. § 82.001(2) (Vernon 1997) (broadly defining what constitutes "product liability" action); Tex.S.B. 717, 76th Leg., 1st C.S. (1999) (limiting governmental suits against manufacturers and retailers). The Texas Product Liability Act of 1993 (the "Act") defines "product liability action" as

> any action against a manufacturer or seller for recovery of damages arising out of personal injury, death or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theories or combination of theories.

Tex.Civ.Prac. & Rem.Code § 82.001(2). Defendant is correct that Plaintiff's cause of action fits within this definition. Plaintiff does not dispute this. The Court, therefore, will treat Plaintiff's claims as products liability claims under the Act.

In a negligent or defective design products liability action brought against a manufacturer of a firearm the plaintiff must prove two additional elements additional to the other elements of its claims. The Act provides:

> In a products liability action brought against a manufacturer or seller of a firearm or ammunition that alleges a design defect in the firearm or ammunition, the burden is on the claimant to prove, in addition to any other elements that the claimant must prove, that:
>
> (1) the *actual design of the firearm or ammunition was defective,* causing the firearm or ammunition *not to function in a manner reasonably expected by an ordinary consumer* of firearms or ammunition; and
>
> (2) the defective design was a producing cause of the personal injury, property damage, or death.

Tex.Civ.Prac. & Rem.Code § 82.006(a) (emphasis added). Section 82.006, therefore, requires Plaintiff to prove that the revolver made by Ruger was defective and that this defect caused it not to function in the manner expected by an ordinary consumer of firearms.

Plaintiff responds first by contending that a jury should "decide whether Ruger manufactured and sold a handgun that was defective in design because it lacked feasible safety features to prevent a 12–year–old from firing it, and whether its defective design was the cause of Brandon Preston's death." (Pl.'s Resp. Def.'s Mot.Summ.J. at 5.) This is true, however, only if Plaintiff can produce sufficient evidence to raise a material issue of fact with regard to the elements of its claims.

Plaintiff's argument that Defendant's revolver was negligently or defectively designed rests primarily on her application of the risk-utility test to show that the firearm was unreasonably dangerous because "alternative safer designs could have been adopted economically." (Pl.'s Resp. Def.'s Mot.Summ.J. at 8.) Citing a litany of firearm industry literature, law journals, newspaper articles, court settlement documents, and government reports, Plaintiff offers interesting evidence that the gun industry, and Ruger specifically, could al-

ter the design of handguns to make them safer. Although this evidence might well be true (the defendants have purposefully not addressed it), the Court is precluded by Texas law from considering the risk-utility test in this case.

■ The Court is precluded because Texas law does not apply the risk-utility test to firearms or ammunition product liability cases. According the Act, in a products liability action brought against a manufacturer or seller of firearms or ammunition that alleges design defect

> The claimant may not prove the existence of the defective design by a comparison or weighing of the benefits of the firearm or ammunition against the risk of personal injury, property damage, or death posed by its potential to cause such injury, damage, or death when discharged.

Tex.Civ.Prac. & Rem.Code § 82.006(b). Because there is no Texas case interpreting this provision, the Court's analysis of this provision must begin with the Texas legislature's words. *See Fitzgerald v. Advanced Spine Fixation Systems, Inc.*, 996 S.W.2d 864, 866 (Tex.1999). Those words unequivocally indicate that a firearm defect cannot be shown by a balancing of the risks and benefits. The Texas Supreme Court has also recognized that the traditional risk-utility test does not apply to firearms. *See Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 261–62 (Tex.1999). In *Hernandez*, a case involving a disposable lighter manufacturer's liability for injuries to a child, the court specifically stated that "[d]ifficulties in applying the risk-utility test have prompted the Legislature to prescribe a consumer-expectation test for firearms and ammunition...." *Hernandez*, 2 S.W.3d at 261 (citing Tex.Civ.Prac. & Rem. Code § 82.006(a)(1)). *See also, id.* at 255 n. 6 (describing § 82.006 as "adopting a consumer expectation test for claims that firearms and ammunition are defectively designed."). Plaintiff, therefore, is incorrect when she asserts that the risk-utility test applies to firearms. (Pl.'s Resp. Def.'s Mot.Summ.J. at 7.)

Under the consumer expectations test, the burden on plaintiffs in firearms cases is to show that the "actual design of the firearm ... was defective, causing the firearm ... not to function in a manner reasonably expected by an ordinary consumer of firearms...." Tex.Civ.Prac. & Rem. Code § 82.006(a)(1). Plaintiff, however, has offered no summary judgment evidence showing that Ruger's revolver did not function in a manner expected by an ordinary consumer of firearms. The firearm in this case is designed to fire when it is cocked and the trigger is pulled. The owner admits that this is how he would expect it to function. (Def.'s Mot.Summ.J. at 12.) He also admits that the handgun "handled perfectly," and that it never fired when he did not intend it to fire. (LeBlanc dep. p. 39.) Plaintiff has simply introduced no summary judgment evidence that raises a fact issue under the consumer expectation test.

Plaintiff's response to Defendant's Motion for Summary Judgment is brimming with demographic, criminological, sociological, and journalistic support for her contention that Defendant's firearm could be made safer with trigger locks or some similar device or design feature. But this demonstrates a misunderstanding of the powers possessed by this Court.

Plaintiff states that "[t]he jurors in this case will most likely have children and may own firearms, therefore as a cross section of our community it should be their decision to determine the appropriateness, reasonableness and utility of Ruger to implement trigger locks on its revolver in this case." (Pl.'s Resp. Def.'s Mot. Summ.J. at 19.) The problem is that there is no legal support for her contention that gun manufacturers are legally responsible for a gun owner's careless storage of a loaded handgun. Without such support, there is nothing for the jury to decide. By accepting Plaintiff's argument, moreover, this Court would brand as defective all handguns sold without trigger locks or similar safety features. Such a doctrine

represents truly strict liability, without any reference to defect or fault, and its only claimed justification is a social decision that the hazardous nature of such products outweighs their benefit to society. This type of decision is legislative in nature and should be made through the democratic process. *See Patterson v. Gesellschaft,* 608 F.Supp. 1206, 1216 (N.D.Tex. 1985) ("[T]he question of whether handguns can be sold is a political one[;] . . . this is a matter for the legislatures, not the courts."). The Court empathizes with Plaintiff's grief and frustration over the senseless death of her son. But it has the power to interpret the law, not to legislate.

Despite its obvious applicability, Plaintiff has ignored section 82.006 of the Act. Her response to Defendant's motion does not even address the Act or the correct standard by which to determine whether the revolver is defective (*i.e.,* the consumer-expectation test). A handgun, in the end, is dangerous because its normal function is to propel bullets with deadly force. That does not make it defective. For a handgun to be defective, there would have to be a manufacturing or design problem, such as a weak or improperly placed part, that would cause it to fire unexpectedly or otherwise malfunction. For Defendant to be liable in this case, moreover, Texas law requires Plaintiff to produce some evidence that the firearm "did not function in a manner reasonably expected by an ordinary consumer of firearms or ammunition." Tex.Civ.Prac. & Rem.Code § 82.006(a)(1). Because Plaintiff has presented no summary judgment evidence on this critical element of her claim, the Court dismisses her negligence and defective design claims.

### C. Unreasonably Dangerous Because of Inadequate Warning

█ Plaintiff also alleges that Defendant failed to warn customers and potential customers of the dangers of buying handguns. Because Plaintiff has failed to show that Defendant had a duty to warn of the obvious dangers of handguns, the Court dismisses this claim.

Plaintiff first contends that Defendant's products are unreasonably dangerous because of the "absence of suitable warnings or instructions as to the risks of the weapons, including but not limited to, adequate warnings of the risk that minors could gain access to guns, adequate instructions regarding how to properly store weapons, warnings that a round may be hidden in the chamber of a pistol, warnings that their pistols could be fired even with the ammunition magazine removed and adequate warning of the attendant risks that could and did thereby occur." (Pl.'s Original Pet. ¶ 27.) Plaintiff reiterates this claim by arguing that "Defendant . . . actively promoted and advertised its guns in a manner that did not alert customers and potential customers, as well as to retain dealers who would be expected to sell and recommend their guns, to the risks of guns." (Pl.'s Original Pet. ¶ 28.) These are both failure to warn claims.

Ruger argues that it is entitled to summary judgment on these claims because it had no duty to warn of the open and obvious danger of a loaded firearm. Defendant cites several cases, including some in Texas, where courts have held that there is no duty to warn of certain dangers associated with firearms because such dangers are open and obvious. (Def.'s Mot. Summ.J. at 12–14.) As with her negligence and defective design claims, Plaintiff fails to respond specifically to Defendant's argument.

Plaintiff offers three reasons to reject Defendant's motion on the warning claim. First, Plaintiff argues that "placing warnings in an owner's manual does not releive (sic) Sturm, Ruger & Company of its obligation to design a reasonably safe product." (Pl.'s Resp. Def.'s Mot.Summ.J. at 13.) Plaintiff next contends that "Ruger's warning and insturctions (sic) were inadequate." (Pl.'s Resp. Def.'s Mot.Summ.J. at 14.) Finally, Plaintiff asserts that "[b]ecause the failure to lock up the gun was

reasonably foreseeable, Ruger's warnings do not insulate them from liability." (Pl.'s Resp. Def.'s Mot.Summ.J. at 15.) Each of these arguments, however, misses the thrust of Defendant's contention, which is that Defendant did not have any duty to warn of the open and obvious dangers of handguns.

■ "A defendant's failure to warn of a product's potential dangers when warnings are required is a type of marketing defect." *American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 426 (Tex.1997). A marketing defect occurs when a defendant knows or should know of a potential risk of harm presented by the product but markets it without adequately warning of the danger or providing instructions for safe use. *See Bristol–Myers Co. v. Gonzales,* 561 S.W.2d 801, 804 (Tex.1978). A marketing defect cause of action consists of five elements: (1) a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product must exist; (2) the product supplier must actually know or reasonably foresee the risk of harm at the time the product is marketed; (3) the product must possess a marketing defect; (4) the absence of the warning and/or instructions must render the product unreasonably dangerous to the ultimate user or consumer of the product; and (5) the failure to warn and/or instruct must constitute a causative nexus in the product user's injury. *See USX Corp. v. Salinas,* 818 S.W.2d 473, 482–83 (Tex.App.—San Antonio 1991, writ denied) (noting that a product supplier has no duty to warn of dangers that are of common knowledge to the public or generally known to the consuming public); *Sims v. Washex Machinery Corp.,* 932 S.W.2d 559, (Tex.App.—Houston (1st Dist.) 1995, n.w.h.) (quoting *USX Corp. v. Salinas* ). A threshold requirement of this cause of action is a duty to warn. Defendant's motion concerns this requirement.

"The existence of a duty to warn of dangers or instruct as to the proper use of a product is a question of law." *Id.* The Texas Supreme Court has held that "the duty to warn is limited in scope, and applies only to hazards of which the consumer is unaware." *Caterpillar, Inc. v. Shears,* 911 S.W.2d 379, 382 (Tex.1995) ("the law of products liability does not require a manufacturer or distributor to warn of obvious risks."). This is also the position of the Restatement (Third) of Torts: Products Liability, which states: "In general, a product seller is not subject to liability for failing to warn or instruct regarding risks and risk avoidance measures that should be obvious to, or generally known by, foreseeable product users." Restatement (Third) of Torts: Prod.Liab. § 2, cmt. j (1997). "The consumer's perspective is that of an ordinary user of the product, not necessarily the same as that of an ordinary person unfamiliar with the product." *Sauder Custom Fabrication, Inc. v. Boyd,* 967 S.W.2d 349, 351 (Tex. 1998). David and Jeremiah Leblanc's own experience and subjective knowledge, therefore, are irrelevant in determining whether Ruger had a duty to warn of the risk that the revolver posed to a child. *Id.* at 350. Plaintiff's task is to establish that Ruger has a duty to warn ordinary users of handguns that a handgun can be dangerous to a child. *See Caterpillar,* 911 S.W.2d at 382 (whether a product has obvious dangers is determined using an objective standard).

Plaintiff, however, cites no Texas case that has imposed a duty to warn on manufacturers or sellers of handguns. This is because such a duty has never been imposed in Texas. The cases applying Texas law have been unanimous in holding (albeit sometimes in dicta) that there is no duty to warn of the obvious dangers of owning or selling a handgun. *See Perkins v. F.I.E. Corp.,* 762 F.2d 1250, 1275 (5th Cir.1985) ("dangers of handguns are obvious and well-known"); *Patterson v. Gesellschaft,* 608 F.Supp. 1206, 1209 n. 7. (N.D.Tex. 1985) ("Although some commentators have argued that consumers must be warned about the dangers of handgun use and the possibility of handgun theft, ... there is no duty to warn of 'dangers' that are obvi-

ous and commonly known. Obviously, it is not 'necessary to tell a zookeeper to keep his head out of the hippopotamus' mouth.' "); *Diggles v. Horwitz*, 765 S.W.2d 839, 842 (Tex.App.—1989, writ denied) (no duty to warn sellers of the hazards of selling handguns). This is the position espoused in other jurisdictions as well. *See, e.g., Mavilia v. Stoeger Industries*, 574 F.Supp. 107, 110 (D.Mass.1983) ("[T]hat death may result from careless handling of firearms is known by all Americans from an early age."); *Riordan v. Int'l Armament Corp.*, 132 Ill.App.3d 642, 87 Ill.Dec. 765, 477 N.E.2d 1293, 1297 (1985) ("no duty to warn arose in the present case as the dangers of illegal handgun misuse were obvious and open conditions. . . ."); *Resteiner v. Sturm, Ruger & Co.*, 223 Mich.App. 374, 380, 566 N.W.2d 53 (1997) ("manufacturer of a simple product has no duty to warn of the product's potentially dangerous conditions or characteristics when they are readily apparent or visible. . . ."); *Richardson v. Holland*, 741 S.W.2d 751, 754 (Mo.Ct.App.1987) ("Certainly there is no duty to warn anyone of the obvious, that the [handgun] was inherently dangerous."); *City of Cincinnati v. Beretta U.S.A., Corp.*, C–990729, C–990814, C–990815, 2000 WL 1133078, *4 (Ohio App. 1 Dist. Aug. 11, 2000) ("The dangers of a gun are obvious and a matter of common knowledge, so no warning is required."). The overwhelming weight of the case law against Plaintiff's position perhaps explains why she chooses not to address the source of the duty in her pleadings. This Court, however, is reluctant to impose a duty under Texas law that the Texas courts and legislature have refused to enforce.

The few cases cited by Plaintiff where courts have imposed a duty to warn of the obvious dangers of handguns are distinguishable from the present case. *See Sturm, Ruger & Co., Inc. v. Day*, 594 P.2d 38, 44 (Alaska 1979) (*state court* held that obviousness of the danger of a product did not preclude plaintiff's recovery for injury from a *defective* product); *Kelley v. R.G. Industries, Inc.*, 304 Md. 124, 497 A.2d 1143, 1148 (1985) (*state court* created a novel cause of action for strict liability for the manufacturers of a certain type of cheap handgun, a "Saturday Night Special," to victims of criminal misuse of such a gun). Plaintiff also cites many non-handgun cases where other state courts have imposed a duty to warn of obvious dangers. *See Robinson v. G.G.C., Inc.*, 107 Nev. 135, 808 P.2d 522, 525 (1991) (action against manufacturer of box-crushing machine to recover for injury to hand); *Thibault v. Sears, Roebuck & Co.*, 118 N.H. 802, 395 A.2d 843, 847 (1978) (action to recover damages for harm sustained by the plaintiff when a lawn mower manufactured by the defendant injured the plaintiff's foot); *Hansen v. Sunnyside Prods., Inc.*, 55 Cal.App.4th 1497, 1518, 65 Cal. Rptr.2d 266, 278 (3 Dist.1997) (operator of water stain remover containing hydrofluoric acid brought a products liability action against the product's manufacturer after she sustained injuries while using the product); *Warner Fruehauf Trailer Co. v. Boston*, 654 A.2d 1272, 1278 (D.C.App. 1995) (plaintiff injured on the job due to the malfunction of a single cylinder liftgate attached to the back of a truck). Although these cases might be *persuasive* to a Texas court creating such a duty, they are not helpful to a federal court applying Texas law. This Court's task is to apply existing Texas law, and not to predict possible changes in that law.

Plaintiff has not shown this Court that Defendant had a duty to warn consumers of the open and obvious dangers of firearms. Because Plaintiff has presented no summary judgment evidence on this threshold element, the Court dismisses her warning claim against Defendant.

### III. *Conclusion*

For the foregoing reasons, Defendant's Motion for Summary Judgment is

GRANTED. This action will be dismissed with prejudice.