778 So.2d 1042 (2001)
Alexander PENELAS, and Miami-Dade County, Appellants,
v.
ARMS TECHNOLOGY, INC., et al., Appellees.
No. 3D00-113.
District Court of Appeal of Florida, Third District.
February 14, 2001.
Certification Denied March 21, 2001.
*1043 Robert A. Ginsburg, County Attorney, Thomas A. Tucker Ronzetti, Javier Alberto Soto, Assistant County Attorneys; and Dennis A. Henigan, Washington, DC, for appellants.
Hardeman & Suarez, Miami; Friday, Eldredge & Clark and William M. Griffin, III, Little Rock, AR; Wilson, Elser, Moskowitz, Edelman & Dicker and James M. Kaplan and Sara J. Sanders; Fowler, White, Burnett, Hurley, Banick & Strickroot and David A. Friedman; Bilzin Sumberg Dunn Price & Axelrod and J. Ronald Denman; Shook, Hardy & Bacon and Thomas M. Sherouse; Angones, Hunter, McClure; Kenny Nachwalter, Seymour, Arnold, Critchlow & Spector, Miami; Gary R. Long and Jeffrey S. Nelson, Kansas City, MO; Paul T. Reid, Wendy Lumish and Carlton Fields, Miami, for appellees.
Lawrence S. Greenwald, Baltimore, MD, for Beretta U.S. Corp. and Fabbrica d'Armi Pietro Berretta as pro hac vice.
James P. Dorr, Chicago, IL, for Sturm, Ruger & Company, Inc., as pro hac vice.
Melissa Anne Maye, Yorkville, IL, for B.L. Jennings, Inc. and Bryco Arms, Inc. as pro hac vice.
Before GERSTEN, GREEN,[*] and FLETCHER, JJ.
FLETCHER, Judge.
Miami-Dade County and its Mayor, Alexander Penelas, [together "County"], filed a complaint against twenty-six federally licensed firearms manufacturers, three firearms trade associations, and two firearms *1044 retail dealers, alleging various theories, including negligence, strict liability for defective products, public nuisance, and ultra hazardous activity, in an effort to recover the County's costs of responding to firearms incidents. The County's complaint also seeks injunctive relief requiring manufacturers to implement life-saving features into their products, and to alter the method of firearm distribution and sale so as to better keep firearms out of criminal circulation. We affirm the trial court's dismissal of the County's action with prejudice.
We have been referred to and examined numerous appellate decisions of other jurisdictions. It appears that all of the appellate decisions but one[1] preclude relief similar to that requested here by the County. However, we do not need to look much, if at all, beyond Florida appellate decisions. In Trespalacios v. Valor Corp. of Fla., 486 So.2d 649 (Fla. 3d DCA 1986), a madman shot and killed eight individuals with a "riot and combat" shotgun. Trespalacios, as personal representative of the estate of one of the victims, brought suit against the seller of the weapon, the distributor, and the manufacturer, on theories of negligence and strict product liability. In affirming the trial court's dismissal as to the distributor and the manufacturer, this court stated:
"The complaint ... failed to state a claim on a strict liability theory because there was no allegation that the product was defective, i.e., that it failed to operate as the consumer expected, and that the defect was the proximate cause of injury.
For the reasons that the firearm was not defective, that manufacture or distribution of the weapon is not unlawful pursuant to either state law or the federal Gun Control Act of 1968, 18 U.S.C. §§ 921-928 (1982), and that neither the manufacturer nor distributor had a duty to prevent the sale of handguns to persons who are likely to cause harm to the public, there was no duty which had been breached by the manufacturer and distributor so as to support a cause of action based on negligence."
486 So.2d at 650 (citations omitted).
As to the contention that the appellees or some of them are engaged in an ultra hazardous activity for which they should be held liable, the Fourth District Court of Appeal concluded in Coulson v. DeAngelo, 493 So.2d 98, 99 (Fla. 4th DCA 1986):
"[T]he complaint alleged that the manufacturer should be held strictly liable for engaging in an ultra hazardous activity.... [L]iability under the doctrine is generally imposed where a defendant engages in an activity which involves a risk of serious harm. The plaintiff did not allege that the act of manufacturing the gun was abnormally dangerous; instead he alleged that the use of the completed product by others was unusually dangerous. Thus, the trial court correctly dismissed this count of complaint."
The United States Eleventh Circuit Court of Appeals, in Shipman v. Jennings Firearms, Inc., 791 F.2d 1532 (11th Cir. 1986), also dealing with the issue of ultra hazardous activity, cited and applied Florida case law[2] dealing with the doctrine. *1045 The federal court observed that under this doctrine Florida imposes liability for damages resulting solely from activities which occur on land and which pose an unusual and unnecessarily high risk of harm to neighboring landowners and their property. Involved was a "Saturday Night Special"[3] used by the shooter. The court affirmed the trial court's summary judgment in favor of the manufacturer/distributor, concluding that Florida state courts rejected or would reject the novel theory of "Saturday Night Special" hazardous activity as proposed by Shipman.
K-Mart Enter. of Fla., Inc. v. Keller, 439 So.2d 283 (Fla. 3d DCA 1983) is not relevant to our inquiry as it involved an action against a firearms retail seller who unlawfully[4] sold a rifle to a purchaser who was both the subject of a felony information and an unlawful user of marijuana. The purchaser then entrusted the weapon to his brother, an ex-heroin addict and alcoholic who was drunk, and who shot the plaintiff, Keller. This was thus a direct action by the injured party against a retail seller who violated federal law. We do not have such direct action before us.
The County's request that the trial court use its injunctive powers to mandate the redesign[5] of firearms and declare that the appellees' business methods create a public nuisance, is an attempt to regulate firearms and ammunition through the medium of the judiciary. Clearly this round-about attempt is being made because of the County's frustration at its inability to directly regulate firearms, an exercise proscribed by section 790.33, Florida Statutes (1999) which expressly preempts to the state legislature the entire field of firearm and ammunition regulation.[6] The County's frustration cannot be alleviated through litigation as the judiciary is not empowered to "enact" regulatory measures in the guise of injunctive relief. The power to legislate belongs not to the judicial branch of government, but to the legislative branch. See Art. II, § 3, and Art. III, Fla. Const.
The trial court's dismissal with prejudice of the amended complaint is affirmed.
NOTES
[*] Judge Green did not hear oral argument, but participated in the decision.
[1] Kelley v. R.G. Indus., Inc., 304 Md. 124, 497 A.2d 1143 (1985), in which the Maryland court, while rejecting the theories put forth by the County here, developed a "Saturday Night Special" theory of liability relating to cheap handguns virtually designed to fall into the hands of the ill-intentioned. This theory was, however, superseded by legislation, see Md. Ann.Code art. 27 § 36-I(h), as noted in Copier by and through Lindsey v. Smith & Wesson Corp., 138 F.3d 833, 837 n. 3 (10th Cir.1998). For a further discussion of the Kelley theory, see Matthew S. Steffey, Torts-Strict Liability-Manufacturers' or Marketers' Liability for the Criminal Use of Saturday Night Specials: A New Common Law Approach-Kelley v. R.G. Industries, 497 A.2d 1143 (Md.1985) 14 Fla. St. L.Rev. 149 (Spring, 1986).
[2] Pursuant to Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
[3] As in Kelley v. R.G. Indus., Inc., 304 Md. 124, 497 A.2d 1143 (Ct.App.1985).
[4] In violation of the gun control provisions of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 922 (1976).
[5] A design that would prevent the weapons from being used by unauthorized persons; a design that would alert users that a round is in the weapon's chamber; a design that would prevent the weapon from being fired when the ammunition magazine is removed; etc.
[6] For additional discussions of the right to bear arms see The Corresponding Duty to the Right of Bearing Arms, 39 Fla. B.J. 167 (1965); The Right to Bear Arms, in CONSTITUTIONAL LITIGATION IN FLORIDA, Fla. B. C.L.E. Manual 115 (1973).