DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BROWARD COUNTY,**
Florida Political Subdivision of the State of Florida,
Appellant,

v.

**FLORIDA CARRY, INC.,**
Appellee.

No. 4D20-359

[March 24, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Carlos A. Rodriguez, Judge; L.T. Case No. CACE14-008532 (14).

Andrew J. Meyers, Broward County Attorney, and Rocio Blanco Garcia and Joseph K. Jarone, Assistant County Attorneys, Fort Lauderdale, for appellant.

W. Aaron Daniel and Elliot B. Kula of Kula & Associates, P.A., Miami, and Benedict P. Kuehne and Michael T. Davis of Kuehne Davis Law, P.A., Miami, for appellee.

LEVINE, C.J.

The Florida Legislature passed the Joe Carlucci Uniform Firearms Act, which states that the legislature "hereby declares that it is occupying the whole field of regulation of firearms and ammunition." The legislature further stated any "existing ordinances, rules, or regulations are hereby declared null and void." Finally, the legislature stated in the statute that it was its policy and intent "to prohibit the enactment of any future ordinances or regulations relating to firearms, ammunition, or components thereof."

With this backdrop, Broward County enacted ordinances that regulate weapons, including guns, at various enumerated places throughout the county. Broward County added to the end of the ordinances that they "shall not be applicable to the extent preempted by Chapter 790."

We find that Broward County may not regulate indirectly what it cannot regulate directly. The Broward County ordinances clearly regulate guns. Under generally accepted definitions of guns, it is commonly understood that guns are firearms and firearms are guns. Further, the plain language of the portion of the ordinances regulating guns, on one hand, and the "provided that" clause attempting to exempt Chapter 790, Florida Statutes, on the other hand, do not give clear guidance to those enforcing these ordinances, nor to the citizenry expected to comply with these ordinances. Thus, we affirm the trial court's ruling that found the ordinances were firearm regulations and thus statutorily preempted.

In May 2014, Florida Carry, an organization with 31,000 members whose mission is to protect and advance the right to bear arms in Florida, sued Broward County for declaratory and injunctive relief concerning several Broward County ordinances. Florida Carry alleged that the ordinances at issue regulated the possession and use of firearms and thus were preempted by section 790.33, Florida Statutes (2014). Section 790.33 declares a legislative intent to occupy "the whole field of regulation of firearms and ammunition."

After the filing of the complaint, Broward County repealed some of the challenged ordinances and revised others. In response, Florida Carry filed an amended complaint, claiming that the 2014 revisions of three Broward County ordinances still violated section 790.33: section 2-39 regulating weapons and guns at Fort Lauderdale-Hollywood International Airport, section 2-137.1 regulating weapons at North Perry Airport, and section 22½-9A regulating weapons by operators of common motor carriers, meaning for-hire ground transportation such as taxis. Specifically, the challenged ordinances provided as follows:

**Sec. 2-39. - Airport security and animal control at Fort Lauderdale-Hollywood International Airport.**

. . . .

(e) *Weapons.*

(1) Unless duly authorized by state or federal law, no person, other than federal, state, or local law enforcement officers on duty, shall carry or transport any weapon on the Airport in a manner contrary to governing law, provided that this prohibition shall not be applicable to the extent preempted by Chapter 790, Florida Statutes (firearms, ammunition, or components thereof).

2

(2) No person shall discharge any gun on the Airport, except as authorized by state or federal law, such as in the performance of official duties requiring the discharge thereof or in the lawful defense of life or property, provided that this prohibition shall not be applicable to the extent preempted by Chapter 790, Florida Statutes (firearms, ammunition, or components thereof).

(3) No person shall furnish, give, sell, or trade any weapon or simulated weapon on the Airport unless authorized under appropriate lease with or permit issued by the County, provided that this prohibition shall not be applicable to the extent preempted by Chapter 790, Florida Statutes (firearms, ammunition, or components thereof).

**Sec. 2-137.1. - Airport security at North Perry Airport.**

. . . .

(e) *Weapons.*

(1) Unless duly authorized by state or federal law, no person, other than federal, state, or local law enforcement officers on duty, shall carry or transport any weapon on the Airport in a manner contrary to governing law, provided that this prohibition shall not be applicable to the extent preempted by Chapter 790, Florida Statutes (firearms, ammunition, or components thereof).

(2) No person shall furnish, give, sell, or trade any weapon or simulated weapon on the Airport unless authorized under appropriate lease with or permit issued by the County, provided that this prohibition shall not be applicable to the extent preempted by Chapter 790, Florida Statutes (firearms, ammunition, or components thereof).

**Sec. 22½-9A. - Operations—Minimum standards of conduct.**

. . . .

(v) Possession of switchblades, knives, clubs, or other weapons by operators, whether in the vehicle or on the

3

person, is prohibited, provided that this prohibition shall not be applicable to the extent preempted by Chapter 790, Florida Statutes (firearms, ammunition, or components thereof).

All three ordinances included the term "weapon," which is defined in section 2-2(jj), Broward County Code of Ordinances, as "a gun, knife, blackjack, slingshot, metal knuckles, or any explosive device, or any other similar instrument capable of being utilized to coerce, intimidate, or injure a person or property."

Broward County filed an answer and affirmative defenses. Among its affirmative defenses, Broward County alleged that Florida Carry lacked standing to bring the action because Broward County had "not promulgated or caused to be enforced any ordinances purporting to regulate firearms, ammunitions, or components thereof."

Broward County moved for summary judgment, arguing that the ordinances at issue regulated weapons and did not regulate firearms and ammunition. Florida Carry filed a cross-motion for summary judgment, arguing that the ordinances at issue governed weapons and that the term "weapon" was defined under Broward County Code to include guns. The trial court granted summary judgment in favor of Florida Carry, finding that the ordinances regulated firearms contrary to section 790.33.

We review de novo an order granting summary judgment. *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). The interpretation of a statute is also reviewed de novo. *Cont'l Cas. Co. v. Ryan Inc. E.*, 974 So. 2d 368, 373 (Fla. 2008).

Legislature Clearly and Unambiguously Prohibits Firearm Regulation

Article I, Section 8(a) of the Florida Constitution provides that "[t]he right of the people to keep and bear arms in defense of themselves and of the lawful authority of the state shall not be infringed, except that the manner of bearing arms may be regulated by law." In 1987, the Florida Legislature exercised that power granted by the Florida Constitution and enacted the Joe Carlucci Uniform Firearms Act, which preempted "the whole field of regulation of firearms and ammunition." § 790.33(1), Fla. Stat. (2014). This Act specifically prohibits local governments from enacting future ordinances regulating firearms and ammunition and declares "null and void" any existing ordinances that regulated firearms and ammunition. *Id.*

4

The Act states, in part:

(1) Preemption.--Except as expressly provided by the State Constitution or general law, the Legislature hereby declares that it is occupying the whole field of regulation of firearms and ammunition, including the purchase, sale, transfer, taxation, manufacture, ownership, possession, storage, and transportation thereof, to the exclusion of all existing and future county, city, town, or municipal ordinances or any administrative regulations or rules adopted by local or state government relating thereto. Any such existing ordinances, rules, or regulations are hereby declared null and void.

(2) Policy and intent.--

(a) It is the intent of this section to provide uniform firearms laws in the state; to declare all ordinances and regulations null and void which have been enacted by any jurisdictions other than state and federal, which regulate firearms, ammunition, or components thereof; to prohibit the enactment of any future ordinances or regulations relating to firearms, ammunition, or components thereof unless specifically authorized by this section or general law; and to require local jurisdictions to enforce state firearms laws.

(b) It is further the intent of this section to deter and prevent the violation of this section and the violation of rights protected under the constitution and laws of this state related to firearms, ammunition, or components thereof, by the abuse of official authority that occurs when enactments are passed in violation of state law or under color of local or state authority.

§ 790.33, Fla. Stat.

In 2011, an amendment created a private right of action by "an organization whose membership is adversely affected" to seek declaratory and injunctive relief against "any ordinance . . . promulgated or caused to be enforced in violation of this section." § 790.33(3)(f), Fla. Stat. (2014). The legislature also enacted civil penalties for any person who violates this preemption by enacting or causing to be enforced a firearm or ammunition regulation. § 790.33(3), Fla. Stat. (2014).

The plain language of section 790.33(2), as evidenced by its stated

5

"policy and intent," could not be clearer: That all firearms regulations enacted by any jurisdiction are "null and void," and that "any future ordinances or regulations relating to firearms" are "prohibit[ed]." Further, any attempt to pass regulations or ordinances "related to firearms, ammunition, or components" is an "abuse of official authority." *Id.* The legislature could not be more forceful in expressing the intent of section 790.33. Local governments are not to regulate firearms or anything "related to firearms," except what is expressly allowed by the statute.[1]

Broward County claims that the ordinances at issue do not regulate firearms, but rather guns to the extent the guns are not firearms. The plain language of the ordinances demonstrates that they regulate weapons. The Broward County Code of Ordinances has a definition of weapons that explicitly includes guns. That code does not define the term guns.

Where the legislature has not defined a word used in a statute, the term should be given its plain and ordinary meaning. *Nunes v. Herschman*, 46 Fla. L. Weekly D112 (Fla. 4th DCA Jan. 6, 2021). We can look to dictionaries to ascertain the plain and ordinary meaning of a word. *Id.* In Black's Law Dictionary (11th ed. 2019), the definition of "gun" states, "See FIREARM." Firearm is defined as "[a] weapon that expels a projectile (such as a bullet or pellets) by the combustion of gunpowder or other explosive. — Also termed *gun*." Black's Law Dictionary (11th ed. 2019).

When examining the American Heritage Dictionary (5th ed. 2020), we get similar results. A gun is defined as "[a] weapon consisting of a metal tube from which a projectile is fired at high velocity," and "[a] portable firearm, such as a rifle or revolver." Further, it states a gun could be "[a] device resembling a firearm or cannon . . . ." *Id.*

Based on these definitions, in common language parlance the term "gun" is clearly synonymous and interchangeable with "firearm." Thus, these ordinances violate section 790.33, which prohibits local regulation of firearms or anything "related to firearms" and expressly preempts "the whole field of regulation of firearms and ammunition." § 790.33(1), Fla. Stat. By regulating firearms, Broward County has violated an express preemption by the state. *Nat'l Rifle Ass'n of Am., Inc. v. City of S. Miami*, 812 So. 2d 504 (Fla. 3d DCA 2002) (finding city ordinance null and void because it regulated firearms by establishing certain safety standards); *Fla. Carry, Inc. v. Univ. of N. Fla.*, 133 So. 3d 966 (Fla. 1st DCA 2013) (en banc) (finding university regulation that prohibited securely encased

---

[1] The exceptions as listed in section 790.33(4) are not applicable to this case.

firearms in motor vehicles violated statute).

While it is true that "chartered counties have broad powers of self-government," it is also equally true that "a county cannot legislate in a field if the subject area has been preempted to the State." *Phantom of Brevard, Inc. v. Brevard Cnty.*, 3 So. 3d 309, 314 (Fla. 2008). Clearly, the legislature has preempted the field of firearms, ammunition, and components from local ordinance and regulation.

Broward County postulates that "while all firearms are guns, not all guns are firearms." Even if we accepted this syllogism, it admits that although not all guns are firearms, still some guns would, in fact, be firearms. Section 790.33 does not allow even some regulation of firearms.

"Provided that" Clause Does not Salvage Ordinances

Broward County next argues that the challenged ordinances do not violate express preemption because the last sentence of each ordinance states: "provided that this prohibition shall not be applicable to the extent preempted by Chapter 790, Florida Statutes." The "provided that" clause argument fails for several reasons. Initially, it does not change the fact that Broward County is still regulating firearms. The ordinances regulate weapons, which include guns. Broward County's own ordinance does not define guns at all, leaving us to define the ordinance by the plain and ordinary use of language. *See Nunes*, 46 Fla. L. Weekly D112. Broward County could have defined guns as being just tasers, stun guns, or BB guns but chose not to. Because guns are synonymously defined as firearms, the challenged ordinances regulate firearms.

The "provided that" clause attempts to cancel out the apparent regulation of firearms in the ordinance. By including the "provided that" clause, Broward County attempts to regulate indirectly what it cannot do directly. *See Penelas v. Arms Tech., Inc.*, 778 So. 2d 1042 (Fla. 3d DCA 2001) (finding county's request for injunctive relief mandating the redesign of firearms was an improper round-about attempt at regulating firearms). Any way these ordinances are viewed, they are regulations of firearms and are clearly related to firearms. Inserting a "provided that" exemption clause, attempting to remove the ordinances from the scope of section 790.33, does not salvage the ordinances or prevent them from violating field preemption. It does, however, as a practical matter, add confusion to law enforcement who would be asked to enforce the ordinances and to the citizenry who would be asked to obey the ordinances.

The "provided that" clause raises more questions than it answers.

7

Under these ordinances, can a citizen take a lawfully registered gun to the airport secured in a case in the trunk of his car? Under these ordinances, can a Broward County law enforcement officer arrest that citizen for carrying that "weapon"? Finally, under these ordinances, can a taxi driver in Broward County possess a gun in his vehicle secured in a case in the trunk of his car? If there is a lack of clarity to give notice to the citizenry on how to comply with these ordinances, then the ordinances do not meet the requirements of due process. *See Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926) (stating that an ordinance which forbids the doing of an act in terms so vague that people of common intelligence must necessarily guess at its meaning and differ as to its application violates due process). If there is insufficient clarity and notice for law enforcement to regulate the possession of a gun, then the ordinances would violate field preemption as mandated by section 790.33. Either way, these ordinances do not survive scrutiny.

Broward County claims that it is limiting its reach to guns that are not firearms. But the plain language of section 790.33 belies this argument. Section 790.33 prohibits the regulation of firearms in its "policy and intent" clause, which prohibits "any future ordinances or regulations relating to firearms." Clearly, these ordinances, even with the "provided that" clause, are related to the regulation of firearms. Thus, Broward County has violated the express field preemption mandated by statute.

Standing to Challenge Ordinances

Broward County also argues that Florida Carry lacks standing because it failed to show that any of its members were adversely affected by the challenged provisions. Specifically, Broward County argues that the challenged provisions were not enforced, and none of Florida Carry's members were arrested. This is different than the affirmative defense Broward County raised below. As an affirmative defense, Broward County argued that it had "not promulgated or caused to be enforced any ordinances purporting to regulate firearms, ammunitions, or components thereof after the amendment of section 790.33, Florida Statutes in 2011. Any amendments to ordinances were to address weapons other than firearms, ammunitions, or components thereof." Thus, Broward County's affirmative defense below focused on the language of the ordinances themselves, whereas on appeal Broward County now focuses on the lack of adverse affect on Florida Carry's members. "[S]tanding is an affirmative defense and failure to raise it in a responsive pleading generally results in a waiver." *Jaffer v. Chase Home Fin., LLC*, 155 So. 3d 1199, 1202 (Fla. 4th DCA 2015); *see also* Fla. R. Civ. P. 1.140(b), (h). Because Broward County did not raise as an affirmative defense the standing argument it now raises

on appeal, this issue is waived and unpreserved. *Sunset Harbour Condo. Ass'n v. Robbins*, 914 So. 2d 925, 928 (Fla. 2005).

Even if Broward County's lack of standing argument were preserved, it would be without merit. Section 790.33(3)(f) creates a private right of action for "an organization whose membership is adversely affected by any ordinance . . . promulgated or caused to be enforced in violation of this section . . . ." Thus, standing can be conferred under two separate circumstances: (1) promulgation of an ordinance or (2) enforcement of an ordinance. Florida Carry pursued its claim under the first circumstance, the promulgation of an ordinance in violation of state preemption. The promulgation of the ordinance was sufficient to enable Florida Carry to bring an action. *See Stadnik v. Shell's City, Inc.*, 140 So. 2d 871, 874 (Fla. 1962) (finding that the promulgation of a rule "is sufficient to enable the party adversely affected to seek relief without awaiting actual prosecution or immediate threat thereof").

Additionally, an alternative theory of standing, had this issue been preserved, can be found in *Florida Home Builders Ass'n v. Department of Labor & Employment Security*, 412 So. 2d 351, 353-54 (Fla. 1982), wherein the Florida Supreme Court articulated the following three-prong test for association standing in the context of administrative proceedings:

1. "[A] substantial number of [the association's] members, although not necessarily a majority, are 'substantially affected' by the challenged rule";

2. "[T]he subject matter of the rule must be within the association's general scope of interest and activity"; and

3. "[T]he relief requested must be of the type appropriate for a trade association to receive on behalf of its members."

Courts have applied this test outside the context of administrative proceedings. *See, e.g.*, *Hillsborough Cnty. v. Fla. Rest. Ass'n*, 603 So. 2d 587, 589 (Fla. 2d DCA 1992). In *Hillsborough*, the Second District applied the three-prong test and found an association had standing to seek injunctive and declaratory relief to challenge the enactment of a county ordinance on the ground that it was unconstitutional.

Like in *Hillsborough*, application of the three-prong test in this case shows that Florida Carry had standing. Florida Carry is an organization with 31,000 members whose mission is to protect and advance the right to bear arms in Florida; the ordinances at issue regulate firearms; and

Florida Carry requested that the court declare the ordinances invalid and enjoin Broward County from enforcing the ordinances.

In conclusion, we find that Florida Carry has standing and that the plain and unambiguous language of the ordinances regulate firearms. These ordinances regulate guns, which is synonymous with firearms, and thus violate the clear expression of the legislature and the state's field preemption of firearms regulation. Thus, we affirm the order of the trial court, which enjoined Broward County from enforcing the ordinances as they regulate firearms, ammunition, and components thereof in violation of section 790.33.

*Affirmed.*

ARTAU, J., concurs specially with opinion.
GROSS, J., dissents with opinion.

ARTAU, J., specially concurring.

I fully concur with the majority opinion but write to respond to the dissent's characterization of the county ordinance as having a "bright line" and "crystal-clear" limitation on the reach of its regulation of firearms. The dissent relies upon the words "shall not be applicable to the extent preempted by Chapter 790, Florida Statutes" as evidencing such clarity. To make its point, the dissent invokes Lewis Carroll's novel, *Through the Looking-Glass*, quoting Humpty Dumpty's scornful comment to Alice when she dared to question the meaning of Humpty's chosen word. Lewis Carroll, *Through the Looking-Glass and What Alice Found There* (London, Macmillan & Co. 1899). But the flaw in the dissent's use of this literary classic is that the characters in the novel were viewing everything in their fantastical world through the lens of a looking-glass where everything was reversed, including logic.

Much like the fictional characters' world of inversed logic, the county ordinance directly prohibits guns while at the same time asserting that its prohibition on guns may not apply if some authority concludes that the prohibition was preempted. Thus, the county has incorporated a looking-glass of sorts into its ordinance, to borrow from the dissent's literary reference. In essence, its looking-glass serves like an unwritten severance clause that attempts to save the ordinance from itself if declared invalid. But while the county may have attempted, short of an outright severance clause, to save the ordinance from its unlawful proscription of guns, it is not self-executing. An authority of some sort must still look to determine whether the ordinance's proscription of guns was preempted by the Florida

10

Legislature when it appropriated for itself in section 790.33, Florida Statutes (2012), the entire field of regulation of firearms and ammunition, asserting itself as the exclusive legislative body that could regulate in this field in view of its overriding concern that any regulation of firearms or ammunition not abridge the U.S. Constitution's Second Amendment right to bear arms in Florida.

The ordinance clearly regulates guns on its face even if the regulation is subject to a subsequent determination by some authority who will need to render a legal opinion as to whether the regulation has been preempted by section 790.33. The dissent discounts the need for this legal opinion because it claims that preemption is obvious to any authority. I agree that it is obvious. But the ordinance's text, utilizing its "to the extent" language, still calls for a legal opinion. The majority has rendered that legal opinion.

GROSS, J., dissenting.

Confronting this issue of statutory interpretation, I feel like Alice in Wonderland facing Humpty Dumpty:

> "I don't know what you mean by 'glory,'" Alice said.
>
> Humpty Dumpty smiled contemptuously. "Of course you don't—till I tell you. I meant 'there's a nice knock-down argument for you!'"
>
> "But 'glory' doesn't mean 'a nice knock-down argument,'" Alice objected.
>
> "When *I* use a word," Humpty Dumpty said in a rather scornful tone, "it means just what I choose it to mean—neither more nor less."
>
> "The question is," said Alice, "whether you *can* make words mean so many different things."
>
> "The question is," said Humpty Dumpty, "which is to be master—that's all."

Lewis Carroll, *Through the Looking Glass*, Ch. VI.

The Florida Legislature has never expressed its intent more clearly than it did in section 790.33, Florida Statutes (2019).

Subsection (1) announces that the Legislature "is occupying the whole field of regulation of firearms and ammunition" to the "exclusion of," among other things, "all existing and future county . . . ordinances or any administrative regulations or rules adopted by local or state government." The Legislature stated its intent "to provide uniform firearms laws in the state" and "to prohibit the enactment of any future ordinances or regulations relating to firearms, ammunition, or components thereof unless specifically authorized by this section or general law." § 790.33(2)(a), Fla. Stat. (2019). For the purposes of section 790.33, the Legislature clearly defined a "Firearm" in subsection 790.001(6) and "Ammunition" in subsection 790.001(19), Florida Statutes (2019).

As the County's attorney eloquently stated at oral argument, the ordinances challenged here "respect preemption on their face." Ordinance 2-39 provides that "this prohibition shall not be applicable to the extent preempted by Chapter 790, Florida Statutes." Ordinance 2-137.1 states that "this prohibition shall not be applicable to the extent preempted by Chapter 790, Florida Statutes (firearms, ammunition, or components thereof)." Ordinance 22 ½-9A says "this prohibition shall not be applicable to the extent preempted by Chapter 790, Florida Statutes (firearms, ammunition, or components thereof)."

Where ordinances incorporate such a crystal-clear statutory prohibition, nothing in the ordinances crosses the bright line so created. The majority effectively ignores the plain meaning of the words "shall not be applicable to the extent preempted by Chapter 790, Florida Statutes."

The majority relies heavily on the fact that the county ordinance definition of a "weapon" includes "guns" within it. But the definition section cannot be read in a vacuum, without the limiting language quoted above, which expressly limits the reach of the ordinances before they impinge on "firearms" or "ammunition." *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012) ("The words of a governing text are of paramount concern, and what they convey, *in their context*, is what the text means.") (emphasis added). As the County argues, the ordinances apply only to "guns" that are not "firearms," such as spear guns or stun guns.

Because the ordinances speak with such clarity, they do not "imping[e] upon" the "exclusive occupation of the field" of "regulation of firearms and ammunition" within the meaning of section 790.33(3)(a), Florida Statutes (2019). The ordinances do not attempt to regulate firearms or ammunition "indirectly." Indeed, the ordinances do not regulate firearms or

ammunition at all. The challenged provisions simply are not applicable to the extent preempted by Chapter 790.

The clarity of the ordinances also deprives appellee of the standing that section 790.33 requires it to demonstrate before it brings suit.[2] Appellee cannot have been "adversely affected" by the "promulga[tion]" of an ordinance that, on its face, has zero impact upon firearms or ammunition. *See* § 790.33(3)(f), Fla. Stat. (2019).

Nor does the record reflect that the ordinances have been "enforced" against any of appellee's members in cases involving firearms or ammunition. *Id.*

In fact, enforcement of the ordinances in violation of section 790.33 would subject a prosecutor to a "civil fine of up to $5,000" and, for a

---

[2] The majority incorrectly suggests that this issue was not preserved. However, the majority fails to quote the County's affirmative defense in full, which makes it clear that the County was raising the defense that the appellee lacked standing because the County had not promulgated or caused to be enforced any preempted ordinances, and thus the appellee did not fall within section 790.33(3)(f)'s grant of standing to an organization whose membership was "adversely affected" by such an ordinance:

> Plaintiff lacks standing to bring this action. Section 790.33(3)(f), Florida Statutes, grants standing to "an organization whose membership is adversely affected by any ordinance, regulation, measure, directive, rule, enactment, order, or policy promulgated or caused to be enforced in violation of this section. . . ." The County has not promulgated or caused to be enforced any ordinances purporting to regulate firearms, ammunition, or components thereof after the amendment of section 790.33, Florida Statutes in 2011. Any amendments to ordinances were to address weapons other than firearms, ammunition, or components thereof. . . .

Additionally, not only did the County plead that Appellee lacked standing because the County had not "caused to be enforced any ordinances purporting to regulate firearms," the County also specifically argued in its response to Appellee's motion for summary judgment that Appellee had "zero evidence of any of its members being harmed in any way by the County's ordinances" and that Appellee had admitted it was "unaware of any enforcement action" by the County after an "exhaustive search" of its members. In short, the County argued below that there was not "a scintilla of evidence that [Appellee's] membership ha[d] been adversely impacted by the allegedly invalid ordinances or that the ordinances are even being enforced in violation of Section 790.33."

13

"knowing and willful" violation, to "termination of employment" or "removal from office by the Governor." § 790.33(3)(c) & (e), Fla. Stat. (2019). There are enough Florida criminal statutes to keep Broward County prosecutors busy without resorting to a prosecution of these misdemeanor ordinance violations in a way that would place a prosecutor's job and pocketbook at risk. Appellee has not demonstrated that it has the standing to bring this lawsuit.

As the "master" of the statutory language here at issue, the majority has Humpty-Dumptied Broward County into paying attorney's fees[3] to appellee's most excellent attorneys, who have worked their magic to achieve the interpretive legerdemain that is at the heart of this case.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

---

[3] *See* § 790.33(3)(f)1., Fla. Stat. (2019).